**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Deon CARRIERE, Defendant and Appellant.**

**Criminal No. 950253.**

Supreme Court of North Dakota.

April 8, 1996.

John E. Greenwood, State's Attorney, Jamestown, for plaintiff and appellee.

Loren C. McCray of Larson Law Firm, Jamestown, for defendant and appellant.

## OPINION

SANDSTROM, Justice.

A patron in a tanning booth next to the booth occupied by Deon Carriere noticed what appeared to be a hand-held mirror at the foot of her bed. Deon Carriere was arrested for disorderly conduct after pieces of a mirror and frame were discovered during a warrantless search of his garbage. Carriere appeals his conviction, contending the district court erred in admitting the evidence of the warrantless search and in admitting certain testimony, and the evidence was insufficient to support the judgment.

We affirm.

I

On April 11, 1995, a patron was tanning in booth one at a tanning salon in Jamestown. The patron testified she saw a blue or green mirror at the foot of her tanning bed. After a few seconds, she got up from the tanning bed and peered into the adjoining tanning booth through a space between the floor and the bottom of the partition between the booths. She did not see anyone's feet in the adjoining booth.

At the time, Deon Carriere was tanning in booth three, the only booth adjoining booth one. As he was leaving the tanning salon, he was confronted by the patron from booth one. Carriere appeared surprised and asked to see the manager.

The manager of the salon called the patron at home and discussed the incident with her. The manager then called the police.

Two officers from the Jamestown Police Department went to Carriere's home to investigate. Carriere told them he wished to speak to an attorney, and the officers left.

The next day, April 12, 1995, a Jamestown police officer searched Carriere's garbage, looking for a green or blue mirror. The garbage was searched at the police station. The officer found a broken mirror among numerous pieces of mail with Carriere's name. The officer returned to the Carriere residence and recovered some broken white plastic pieces he had seen in the bottom of one of the trash canisters. The plastic pieces appeared to form a frame. Neither the mirror pieces nor the broken plastic frame held any fingerprints.

On April 13, 1995, a complaint charging Carriere with disorderly conduct was filed in district court.

At trial, an officer testified there was a six-inch space between the floor and the partition separating booths one and three. The officer testified the space was wide enough for a person to lie on the floor and manipulate a mirror through the braces of tanning bed one, placing the mirror at the foot of the bed. The positioning of the mirror was difficult, and at least two witnesses testified they could not get the mirror into position without banging on the metal structure at the end of the tanning bed.

After Carriere questioned officers about possible planting of evidence, and called a Jamestown city councilman to testify as to complaints of harassment by Jamestown police, the state's attorney called the chief of police to testify as to the officers' reputation for truthfulness. The district court found Carriere guilty of disorderly conduct under N.D.C.C. § 12.1–31–01(7).

Carriere appeals from the conviction, contending the warrantless search of his garbage violated his constitutional rights, the district court erred in admitting the testimony of the chief of police, and the evidence was insufficient to support the judgment.

The district court had jurisdiction under N.D. Const. Art. VI, § 8, and N.D.C.C. § 27–05–06(1). The appeal from the district court was filed in a timely manner under N.D.R.App.P. 4(b). This Court has jurisdiction under N.D. Const. Art. VI, § 6, and N.D.C.C. §§ 29–01–12, and 29–28–07.

## II

■ Carriere contends the warrantless search of his garbage requires suppression of the evidence seized. Although the United States Constitution does not afford protection against warrantless searches of garbage when the garbage is left for collection in an area accessible by the public, *California v. Greenwood,* 486 U.S. 35, 41, 108 S.Ct. 1625, 1629, 100 L.Ed.2d 30 (1988), Carriere argues that N.D. Const. Art. I, § 8, provides greater protection than the Fourth Amendment of the United States Constitution. Carriere also contends that although we specifically held N.D. Const. Art. I, § 8, did *not* protect a person's garbage from warrantless searches and seizures in certain instances, *State v. Rydberg,* 519 N.W.2d 306 (N.D.1994), it does protect him since he had a greater expectation of privacy due to the placement and protection of his garbage.

■ "[I]t is constitutionally reasonable for law enforcement officials to seize 'effects' that cannot support a justifiable expectation of privacy without a warrant, based on probable cause to believe they contain contraband." *State v. Rode,* 456 N.W.2d 769, 770 (N.D.1990) (quoting *United States v. Jacobsen,* 466 U.S. 109, 121–22, 104 S.Ct. 1652, 1660–61, 80 L.Ed.2d 85 (1984)).

■ For Carriere's garbage to be protected under N.D. Const. Art. I, § 8, Carriere must have had a "subjective expectation of privacy in [his] garbage that society accepts as objectively reasonable." *Rydberg* at 309 (quoting *Greenwood,* 486 U.S. at 39, 108 S.Ct. at 1628, 100 L.Ed.2d at 36); *see also State v. Ackerman,* 499 N.W.2d 882, 884 (N.D.1993).

■ We review de novo whether Carriere's expectation of privacy in his garbage was objectively reasonable. *State v. Skaro,* 474 N.W.2d 711, 716–717 (N.D.1991); *Stoppleworth v. State,* 501 N.W.2d 325, 327 (N.D.1993); *see Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *O'Connor v. Ortega,* 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987); *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979).

Carriere testified he had a subjective expectation of privacy in his garbage, evidenced by the fact he had confronted people when they tampered with the garbage. The garbage was placed at the end of his driveway near the street, but on his property, "for the sole purpose of the trash collection process." Carriere testified the garbage was placed in a container with a strap holding the cover in place.

Carriere contends our decision in *Rydberg* allows a citizen to be protected from a search if the placement of the garbage is in a more private place. In *Rydberg,* we held N.D. Const. Art. I, § 8, did not provide Rydberg

greater protection than the United States Constitution because Rydberg did not have a reasonable expectation of privacy in her garbage. Due to the public location of the garbage and the placement of the garbage cans on the edge of a public alley behind her house, we held that Rydberg did not have a reasonable expectation of privacy. *Rydberg* at 310.

In *Rydberg*, we also noted the public location of a defendant's garbage (next to an alley), where it was exposed to the general public "for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through respondents' trash or permitted others, such as the police, to do so," indicates a defendant's claim of privacy is not objectively reasonable. *Rydberg* (quoting *Greenwood*, 486 U.S. at 40–41, 108 S.Ct. at 1628–29, 100 L.Ed.2d at 36–37); *see also State v. Ronngren*, 361 N.W.2d 224, 228 (N.D.1985).

■ We have noted the provisions of N.D. Const. Art. I, § 8, are "almost identical" to the Fourth Amendment. *Rydberg* at 310. We have acknowledged, however, that the North Dakota Constitution may provide greater protection than the United States Constitution in some instances. *Rydberg*. Carriere, however, has not cited a statute, a case, or any constitutional history to support his argument the North Dakota Constitution supplies any more protection than that afforded by the United States Constitution *when there is no objectively reasonable expectation of privacy.*

Carriere had no reasonable expectation of privacy in his garbage set out for collection. His garbage was lawfully searched, and the evidence lawfully seized.

### III

Carriere next contends the district court inappropriately admitted evidence of the truthfulness of the officers who testified.

The State called the Jamestown chief of police to testify as to the reputation for truthfulness of the officers who had already testified on behalf of the State. Carriere contends the police chief's testimony was not admissible because he did not attack the character of the witnesses. Carriere argues admitting the evidence was an abuse of discretion because the testimony "could have influenced the district court's decision."

The State argues Carriere attacked the character of the officers. Because of that challenge, the State called the chief of police to rebut the attack.

Both parties cite N.D.R.Ev. 608(a) to support their contentions.

■ "Unless the substantial rights of an accused are prejudiced, an error in a criminal trial is harmless." *State v. Purdy*, 491 N.W.2d 402, 409 (N.D.1992) (citing *State v. Vogel*, 467 N.W.2d 86, 92 (N.D.1991)). When a party is not complaining of a fundamental error, that party must demonstrate the error of admitting evidence was "improper *and* prejudicial." *State v. Drader*, 374 N.W.2d 601, 602 (N.D.1985) (emphasis in original).

■ Carriere bears a heavy burden in light of this Court's statement "[t]he introduction of allegedly inadmissible evidence in a non-jury case rarely will be reversible error." *State v. Obrigewitch*, 356 N.W.2d 105, 107 (N.D.1984). This Court has also noted a reversal in such cases is required only if "it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made." *Obrigewitch*.

■ We need not address the admissibility of the police chief's testimony under N.D.R.Ev. 608(a). Carriere's assertion the evidence "could have" influenced the decision of the court is not enough. Carriere has not shown that even if the testimony was inadmissible, this particular testimony affirmatively induced the court to make a different finding. *See Obrigewitch*.

### IV

Carriere contends the evidence was insufficient to support his conviction, warranting reversal.

■ Our review of the sufficiency of evidence is limited. *State v. Torres*, 529 N.W.2d 853, 855 (N.D.1995). We do not reweigh evidence, or judge the credibility of witnesses

on review. *Torres*. We will reverse a criminal conviction only if the defendant shows, after viewing all reasonable inferences in favor of affirmance, that no rational fact finder could have found the defendant guilty beyond a reasonable doubt. *Torres*.

Carriere was in the only booth with access to booth one at the time the patron saw the mirror. Mirror fragments were found in Carriere's garbage. The State submitted evidence showing a mirror could be manipulated from Carriere's booth into booth one so as to display its contents. A rational fact finder could have found, beyond a reasonable doubt, Carriere's actions violated N.D.C.C. § 12.1–31–01(7).

V

The judgment of the district court is affirmed.

VANDE WALLE, C.J., and MESCHKE and NEUMANN, JJ., concur.

LEVINE, S.J., concurs in the result.

The Honorable MARY MUEHLEN MARING was not a member of the Court when this case was heard and did not participate in this decision.