Lebanon District Court
No. 2002-445

THE STATE OF NEW HAMPSHIRE

v.

JOHN W. GOSS

Argued: June 11, 2003
Opinion Issued: September 29, 2003

*Peter W. Heed*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*DesMeules, Olmstead & Ostler*, of Norwich, Vermont (*George H. Ostler* on the brief and orally), for the defendant.

NADEAU, J. The defendant, John W. Goss, appeals his conviction for possession of marijuana, *see* RSA 318-B:2 (Supp. 2002), arguing that the Trial Court (*Cirone*, J.) erred in denying his motion to suppress evidence seized from his residence. We reverse and remand.

The following facts appear in the record. On August 28, 2001, Officer Keith Bergeron of the Enfield Police Department applied for a warrant to search the defendant's residence. The affidavit stated in part that Detective Sergeant May of the Enfield Police Department had observed "what appeared to be a 'grow light'" in one of the windows of the Goss residence which appeared "to have been intentionally obscured with a white material, that seems to have been sprayed on." It also stated that on August 14 and 28, 2001, Detective Sergeant May and Officer Bergeron, respectively, had picked up trash from the Goss residence. The trash was in black plastic bags located in the driveway to the Goss residence, about three feet from Oak Hill Road. The trial court found that the bags were left out on the normal trash pick-up day. On each occasion, the trash contained a wire scraper on which there was charred material that tested positive for presumptive marijuana presence.

The application sought a warrant to search for and seize marijuana and specified items typically used in, or indicative of, marijuana cultivation. The warrant was issued and executed on August 28, 2001. The officers seized some marijuana, a marijuana cigarette and three pipes. The defendant was charged with possession of marijuana in violation of RSA 318-B:2 and found guilty.

On appeal, the defendant argues that the warrant to search his residence was issued in violation of his rights under the Fourth Amendment to the Federal Constitution and Part I, Article 19 of the State Constitution. We first address the defendant's claim under our State Constitution and cite federal cases for guidance only. *State v. Ball*, 124 N.H. 226, 231, 232-33 (1983). Our review of the trial court's order on a motion to suppress is *de novo*, except as to any controlling facts determined at the trial court level in the first instance. *See State v. Finn*, 146 N.H. 59, 60 (2001).

The defendant contends that the search warrant should not have issued because the affidavit contained information obtained from two prior illegal searches of his garbage, and the remaining information did not establish probable cause. Specifically, the defendant argues that the seizure of his garbage without a warrant, and not subject to any recognized exception to the requirement for a warrant, was *per se* unreasonable.

The defendant first argues, notwithstanding the trial court's finding to the contrary, that because a driveway is part of a home's curtilage under New Hampshire law, the trash was taken from the curtilage in violation of State law. In light of our holding below, we need not decide whether the trial court's finding to the contrary is supported by the evidence.

The defendant next contends that citizens have an expectation of privacy in their garbage. He asserts that "[p]eople intend their garbage, though placed outside their dwelling for collection, to remain private." In its brief, the State contended that the defendant had failed to preserve this argument for appellate review. At oral argument, however, the State indicated that it would not be opposed to the court's changing its view on search and seizure issues to an expectation of privacy analysis. We therefore address the defendant's argument.

In *Katz v. United States*, 389 U.S. 347, 353 (1967), the United States Supreme Court first articulated an expectation of privacy analysis under the Fourth Amendment to the Federal Constitution. Until today, we have not adopted such an analysis under our State Constitution. *See, e.g., State v. Pinkham*, 141 N.H. 188, 189 (1996). We have, however, recognized that an expectation of privacy plays a role in the protection afforded under Part I, Article 19 of the New Hampshire Constitution: "Our State Constitution protects all people, their papers, their possessions and their homes from unreasonable searches and seizures. It particularly protects people from unreasonable police entries into their private homes, because of the heightened expectation of privacy given to one's dwelling." *State v. Grey*, 148 N.H. 666, 668-69 (2002) (citation omitted); *see also Pinkham*, 141 N.H. at 193-94 (Broderick, J., dissenting).

In *State v. Canelo*, 139 N.H. 376, 386 (1995), we noted that "Part I, article 19 thus manifests a preference for privacy over the level of law enforcement efficiency which could be achieved if police were permitted to search without probable cause or judicial authorization." We there adopted an exclusionary rule under our State Constitution, which, in part, "serves to redress the injury to the privacy of the search victim." *Id.* at 387. We also declined to adopt a good faith exception to the exclusionary rule because we found it "incompatible with and detrimental to our citizens' strong right of privacy inherent in part I, article 19 and the prohibition against the issuance of warrants without probable cause." *Id.*

We thus have tacitly recognized an expectation of privacy under our State Constitution and believe the time has come to adopt explicitly a reasonable expectation of privacy analysis under Part I, Article 19. We believe the most cogent articulation of that analysis was supplied by Justice Harlan in his concurrence in *Katz*, 389 U.S. at 361: "My

understanding of the rule that has emerged from prior decisions is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" We therefore adopt Justice Harlan's two-part test under Part I, Article 19.

██ We conclude that the defendant exhibited an actual expectation of privacy in his trash because he placed it in black plastic bags with the expectation it would be picked up by authorized persons for eventual disposal. We also conclude that society is prepared to recognize that expectation as reasonable. We acknowledge that the United States Supreme Court has held, to the contrary, that "society would not accept as reasonable [a] claim to an expectation of privacy in trash left for collection in an area accessible to the public." *California v. Greenwood*, 486 U.S. 35, 41 (1988). We are free, however, to construe our State Constitution to provide greater protection than the Federal Constitution. *See id.* at 43; *Ball*, 124 N.H. at 231-32. We do so here.

"Clues to people's most private traits and affairs can be found in their garbage. Almost every human activity ultimately manifests itself in waste products and any individual may understandably wish to maintain the confidentiality of his refuse." *State v. Hempele*, 576 A.2d 793, 802 (N.J. 1990) (quotation, brackets and ellipsis omitted). Personal letters, bills, receipts, prescription bottles and similar items that are regularly disposed of in household trash disclose information about the resident that few people would want to be made public. *See People v. Edwards*, 458 P.2d 713, 718 (Cal. 1969).

Nor do we believe that people voluntarily expose such information to the public when they leave trash, in sealed bags, out for regular collection. *But see Greenwood*, 486 U.S. at 40. The Supreme Court reached the contrary conclusion on the grounds that (1) "[i]t is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public," *id.* (footnotes omitted); and (2) the "respondents placed their refuse at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through [the] trash or permitted others, such as the police, to do so," *id.*

We find the first ground persuasively answered by Justice Brennan in his *Greenwood* dissent: "The mere *possibility* that unwelcome meddlers *might* open and rummage through the containers does not negate the expectation of privacy in their contents any more than the possibility of a burglary negates an expectation of privacy in the home . . . ." *Id.* at 54.

As for the second ground, we do not believe that conveying trash to a trash collector for disposal renders an expectation of privacy in the trash unreasonable. "It should be reasonable to expect that those who are authorized to remove trash will do so in the manner provided by ordinance or private contract." *Hempele*, 576 A.2d at 807. In most cases that expectation would be that "the contents of [the resident's] garbage [would be] intermingled with other refuse in the well of the truck, and ultimately dumped into a central collection place where the forces of nature would destroy them." *Smith v. State*, 510 P.2d 793, 804 (Alaska 1973) (Rabinowitz, C.J., dissenting), *cert. denied*, 414 U.S. 1086 (1973). We conclude that such an expectation of privacy is reasonable.

We acknowledge that in finding protection under our State Constitution under these circumstances, we join a small minority of courts. *See, e.g.*, *State v. Tanaka*, 701 P.2d 1274 (Haw. 1985); *Hempele*, 576 A.2d 793; *State v. Boland*, 800 P.2d 1112 (Wash. 1990). Like the court in *Hempele*, however, "we are persuaded that the equities so strongly favor protection of a person's privacy interest that we should apply our own standard rather than defer to the federal provision." *Hempele*, 576 A.2d at 814 (quotation omitted). Because we have found protection under our State Constitution, we need not conduct a separate federal analysis. *See Ball*, 124 N.H. at 232.

■ Because the warrantless search of the defendant's garbage violated Part I, Article 19 of our State Constitution, the information obtained from that search should be excised from the affidavit in support of the warrant and the remainder of the affidavit examined to determine whether it establishes probable cause. *See State v. Plch*, 149 N.H. 608, 620 (2003).

■ Following the State's consent to strike information in the affidavit regarding a neighbor's tip to police, the only remaining factual averment is that Detective Sergeant May observed an apparent "grow light" through a window that appeared to have been obscured. We hold that this was insufficient, as a matter of law, to establish probable cause. Accordingly, the fruits of the August 28 search should have been suppressed, *see Canelo*, 139 N.H. at 386-87, and the defendant's conviction must be reversed.

*Reversed and remanded.*

BROCK, C.J., and DALIANIS and DUGGAN, JJ., concurred; BRODERICK, J., dissented.

BRODERICK, J., dissenting. While I join with the majority in adopting a reasonable expectation of privacy test under Part I, Article 19 of our State

Constitution, a test long used in Fourth Amendment analysis, I respectfully dissent because the facts of this case and common experience do not support the majority's holding. In my opinion and in the overwhelming opinion of other jurisdictions, as well as the United States Supreme Court, a defendant's subjective expectation of privacy in the contents of his trash left for pickup adjacent to a public way is not objectively reasonable. While a different result may pertain for trash not yet placed near curbside for pickup, the salient circumstances of this case do not trigger constitutional protection.

It is understandable that the defendant wanted the contents of his trash to be private. Indeed, there are "many reasons why [citizens] would not want their castaway clothing, letters, medicine bottles or other telltale refuse and trash to be examined by neighbors or others." *Smith v. State,* 510 P.2d 793, 798 (Alaska) (quotation omitted), *cert. denied,* 414 U.S. 1086 (1973). As "[u]nderstandable as this desire for confidentiality may be," however, "it is not conclusive of society's willingness to recognize an expectation of privacy in a garbage receptacle as reasonable." *Id.* To conclude otherwise, as the majority does, contravenes collective common experience and extends constitutional protection as a cure for bad manners and impolitic behavior.

> In the real world to so view the status of one's discarded trash is totally unrealistic, unreasonable, and in complete disregard of the mechanics of its disposal. . . . The contents of the [bags] could not reasonably be expected by defendant to be secure, nor entitled to respectful, confidential and careful handling on the way to the dump. Trash generally is not so highly regarded. Collectors do not bear some kind of fiduciary relationship with trash customers to make sure that their trash remains inviolate.

*United States v. Shelby,* 573 F.2d 971, 973 (7th Cir.), *cert. denied,* 439 U.S. 841 (1978).

Although most people would probably prefer that others leave their trash untouched, such intrusions are not unexpected. As the United States Supreme Court has observed, "[i]t is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public." *California v. Greenwood,* 486 U.S. 35, 40 (1988). This is no less true in 2003 than it was in 1988 — would that it were otherwise. "Most people know that their garbage will be seen at some point by a third person, at the very least by the local garbage collector. Most people are aware that garbage sitting on public streets is readily accessible. . . . The

homeless often rummage through garbage for food and other items." *State v. Hempele,* 576 A.2d 793, 819 (N.J. 1990) (Garibaldi, J., dissenting). In New Hampshire, as elsewhere, "[i]t is not infrequent that valuable items are placed in the trash in hopes that someone passing by will see them . . . and make good use of them." *Moran v. State,* 644 N.E.2d 536, 541 (Ind. 1994).

Moreover, "the police cannot reasonably be expected to avert their eyes from evidence of criminal activity that could have been observed by any member of the public." *Greenwood,* 486 U.S. at 41. "What a person knowingly exposes to the public, even in his own home or office," is not entitled to constitutional protection. *Id.* (quotation omitted).

In the world in which we live, the defendant's asserted expectation of privacy is not objectively reasonable. His trash was placed for pickup on the normal trash day, three feet from the public road, in his driveway. "It sat exposed to the public, waiting to be gathered up by the trash collector." *Commonwealth v. Pratt,* 555 N.E.2d 559, 567 (Mass. 1990). "[H]aving deposited [his trash] 'in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it,' . . . [the defendant] could have had no reasonable expectation of privacy in the inculpatory items [he] discarded." *Greenwood,* 486 U.S. at 40-41.

The vast majority of courts considering the issue have upheld searches and seizures under comparable circumstances. *See* Annotation, *Expectation of Privacy — Garbage,* 62 A.L.R.5th 1, 21, 26-62 (1998). In *Pratt,* for instance, the Massachusetts Supreme Judicial Court, construing a state constitutional provision virtually identical to Part I, Article 19, held that a defendant had no objectively reasonable expectation of privacy in the contents of a trash bag which he, like the defendant in this case, had placed for pickup three feet from the street, near his driveway. *Pratt,* 555 N.E.2d at 567.

The North Dakota Supreme Court reached a similar conclusion in *State v. Carriere,* 545 N.W.2d 773, 775-76 (N.D. 1996). In *Carriere,* the defendant argued that "he had a subjective expectation of privacy in his garbage, evidenced by the fact he had confronted people when they tampered with the garbage." *Id.* at 775. Like the defendant in this case, the defendant in *Carriere* placed his garbage for trash collection at the end of his driveway, near the street. *Id.* The court concluded that, under these

circumstances, the defendant's subjective expectation of privacy was not objectively reasonable. *Id.* at 775-76; *see also State v. McCall*, 26 P.3d 1222, 1222-24 (Idaho 2001) (no reasonable expectation of privacy in garbage set out for collection); *State v. Payne*, 662 N.E.2d 60, 61-62 (Ohio Ct. App. 1995) (no reasonable expectation of privacy in garbage bags set out for collection near end of defendant's driveway; "once garbage is placed outside for collection there is no reasonable expectation of privacy in its contents").

Because I believe that everyday life experience confirms that any subjective expectations we may have of hoped-for privacy in our discarded trash are not objectively borne out, I cannot support a holding that extends constitutional protection to the defendant's trash. Accordingly, I would conclude that the warrantless search at issue did not violate Part I, Article 19 of our State Constitution.