**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 95-5752

HENRY LEE WHITE,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Winston-Salem.
N. Carlton Tilley, Jr., District Judge.
(CR-95-10)

Argued: March 7, 1997

Decided: April 7, 1997

Before WILLIAMS, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Daniel Smith Johnson, Winston-Salem, North Carolina,
for Appellant. Clifton Thomas Barrett, Assistant United States Attor-
ney, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Walter
C. Holton, Jr., United States Attorney, Greensboro, North Carolina,
for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Henry Lee White appeals his conviction for possession of a firearm by a convicted felon, see 18 U.S.C.A. § 922(g)(1) (West Supp. 1997), and the enhancement of his sentence under the Armed Career Criminal Act, see 18 U.S.C.A. § 924(e)(1) (West Supp. 1997). He argues that the firearm was seized in violation of his Fourth Amendment rights, that using the same prior offense to support a conviction under § 922(g)(1) and an enhancement under § 924(e)(1) violates the double jeopardy clause, and that § 922(g)(1) exceeds Congress's ability to regulate under the Commerce Clause. Finding no error, we affirm.

I.

At 5:15 p.m. on September 2, 1994, Officer Patricia A. McClure of the Winston-Salem police department saw White's vehicle stopped in a moving lane of traffic, about 25 feet from a stop sign. While the vehicle was stopped, a man walked up to the driver's window, placed his hands on the windowsill, and conversed with White. Officer McClure testified that during this conversation, she was unable to see the hand movements of the unidentified man. When White and the unidentified man saw Officer McClure, they "abruptly ended their conversation." (Appellee's Br. at 3.) The man walked away from White's car in the opposite direction from Officer McClure, and White drove to the stop sign.

Officer McClure suspected that White had just completed a drug transaction. White was in an area known for drug activity, and Officer McClure had previously purchased drugs while undercover in a similar fashion. Officer McClure also believed that White's vehicle inspection sticker had expired. Based on these circumstances, Officer McClure stopped White. She immediately learned that the inspection sticker was valid, but she nonetheless asked for White's license and

2

registration. She also told White that she suspected that he had just engaged in a drug transaction, and she asked if he had engaged in any illegal activities. White said no.

Officer McClure called in White's license and learned that it had been revoked. Driving with a revoked license is an arrestable offense. Officer McClure returned to White's car and, after telling him to exit the car, asked him again if he was involved in any illegal activity. Following White's second denial, Officer McClure asked White if she could search the car. She told him that he could be arrested for driving with a revoked license, and that if he did not consent to the search, she could arrest him and lawfully search the car. She then asked if he had any weapons in the car. This time, White admitted that he had a loaded gun under the driver's seat. Officer McClure searched the area described and seized the loaded weapon. She then issued him a citation for driving with a revoked license and sent him on his way. Later, White was indicted for possession of a firearm by a convicted felon. See 18 U.S.C.A. § 922(g)(1) (West Supp. 1997).

Alleging a deprivation of his Fourth Amendment rights, White filed a motion to suppress physical evidence on February 16, 1995. The district court heard argument on this motion on March 6, 1995, and denied it on March 28, 1995. Thereafter, on March 29, 1995, the government filed a notice of enhancement under the Armed Career Criminal Act. See 18 U.S.C.A. § 924(e)(1). White filed a motion arguing that such an enhancement would violate the Double Jeopardy Clause. Around the same time, White filed another motion arguing that 18 U.S.C.A. § 922(g)(1) was unconstitutional under United States v. Lopez, 115 S. Ct. 1624 (1995). Pending disposition of these two motions, White entered a conditional guilty plea on April 5, 1995, reserving his right to appeal the district court's decisions on the suppression motion, the double jeopardy claim, and the alleged Lopez violation. White was sentenced to 135 months imprisonment followed by three years of supervised release.

On August 24, 1995, the district court denied both of White's pending motions. At the same time, the district court entered formal judgment. White now appeals.

3

II.

White challenges Officer McClure's seizure of the firearm, claiming that the firearm should have been inadmissible because it was seized in violation of his constitutional rights. He argues that his initial detention violated the Fourth Amendment because it was not based on reasonable suspicion. He further argues that, because he was not given Miranda warnings before he told Officer McClure that he had a gun, the gun was "fruit of the poisonous tree." We address these arguments in order, and reject each one.

A.

White first argues that Officer McClure did not have the necessary reasonable suspicion to justify the initial investigatory stop. In White's view, upholding this stop would mean that "anytime that two black males had a conversation in a `high crime' area and this conversation was observed by a law enforcement officer, these black males would be subject to an investigatory detention." (Appellant's Br. at 5.) On the other hand, the Government contends that the character of the neighborhood, White's reaction upon seeing Officer McClure, and Officer McClure's practical experience in recognizing drug transactions all support the existence of reasonable suspicion. The district court agreed with the Government, concluding that the totality of the circumstances supported Officer McClure's claim that she had reasonable suspicion to stop White.

The parties correctly assume that "reasonable suspicion" is required to justify an investigatory stop of an automobile. See United States v. Cortez, 449 U.S. 411, 417-18 (1981); United States v. Lender, 985 F.2d 151, 154-55 (4th Cir. 1993); cf. Whren v. United States, 116 S. Ct. 1769, 1772 (1996) (noting that an automobile stop is "subject to the constitutional imperative that it not be `unreasonable' under the circumstances"). This standard, an "elusive concept," Cortez, 449 U.S. at 417, requires "that the totality of the circumstances -- the whole picture -- must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." Id. at 417-18. For our part, in considering the district court's denial of White's motion to suppress, we review its legal conclusions

4

de novo and its factual findings for clear error. See United States v. Rusher, 966 F.2d 868, 873 (4th Cir. 1992). The specific determination of reasonable suspicion is a legal matter, subject to de novo review. See United States v. Miller, 925 F.2d 695, 698 (4th Cir. 1991) (reviewing probable cause determination de novo).

As noted above, the Government argues that the men's conduct upon seeing Officer McClure, the character of the neighborhood, and Officer McClure's practical experience support the existence of reasonable suspicion to stop White. We have previously held that these factors may be considered in establishing reasonable suspicion. See United States v. Stanfield, ___ F.3d #6D 6D6D#, No. 96-4061, at 13-16 (4th Cir. March 31, 1997); Lender, 985 F.2d at 154 (considering evasive conduct and the arresting officer's practical experience pertinent to reasonable suspicion); United States v. Moore , 817 F.2d 1105, 1107 (4th Cir. 1987) (noting that the defendant's presence in a high crime area may be relevant to reasonable suspicion). More specifically, the Fourth Circuit has previously upheld a comparable investigatory detention. In Lender, the arresting officer observed four or five men "huddled on a corner" in a known drug area. 985 F.2d at 153. One of the men "had his hand stuck out with his palm up, and the other men were looking down toward his palm." Id. When the group of men saw the police officers, they "began to disperse, and the defendant walked away from the officers with his back to them." Id. Based on the hour of the day, the group's dispersal upon seeing the officers, the known character of the neighborhood, and the officers' practical experience in recognizing drug transactions, the court upheld the investigatory detention.

On the other hand, White relies on United States v. Sprinkle, ___ F.3d ___, No. 95-5441, Slip op. at 1 (4th Cir. Feb. 11, 1997), in arguing that there was not reasonable suspicion to support the stop. In Sprinkle, the arresting officer observed Victor Poindexter, who the officer knew had recently completed a prison sentence for a drug-related conviction, sitting in the driver's seat of a car. Id. at 2. Soon thereafter, Carl Sprinkle walked out of a nearby house and got into the passenger side of Poindexter's car. Sprinkle and Poindexter then "`huddled to the center of the console of the vehicle' with their hands `close[ ] together.'" Id. at 3 (alteration in original). Although the arresting officer could see their hands, he did not see any contraband

5

or exchange. When Poindexter saw the officer, he covered his face. Then, when the arresting officer went to his own car, Poindexter started his car and drove off. "[H]e did not speed, drive erratically, or commit any traffic violations." Id. Nonetheless, the arresting officer tried to stop Poindexter and Sprinkle. When Sprinkle sought to exclude evidence seized as a result of this investigatory detention, the Government offered five factors supporting reasonable suspicion:

> (1) [The arresting officer] knew that Poindexter had a criminal record and had recently been released from prison after serving time for narcotics violations, (2) the subjects were spotted in a neighborhood known by the officers for high (narcotics) crime, (3) when Sprinkle entered the Cougar, he and Poindexter huddled toward the center console with their hands close together, (4) as [the arresting officer] walked past the car, Poindexter put his head down and his hand up to his face as if to avoid recognition, and (5) Poindexter drove away as soon as the officers walked by the car.

Id. at 5. Despite this confluence of factors, we concluded that there was not reasonable suspicion to justify an investigatory detention.

In White's view, Sprinkle controls his case. We disagree. First, White was stopped in a moving lane of traffic when first observed by Officer McClure. Even though the Government disclaims reliance on United States v. Whren, 116 S. Ct. 1769, 1772 (1996), violation of the state or local traffic laws is a factor that may be considered in assessing the reasonableness of investigatory actions. See Stanfield, slip op. at 13. Second, Officer McClure, like the arresting officer in Lender and unlike the arresting officer in Sprinkle, could not see the hands of White and the unidentified man during their conversation. Therefore, there was no evidence to dispel Officer McClure's suspicion that they were engaged in an illegal transaction. Third, the unidentified man "abruptly" turned and walked away from Officer McClure when he saw her. This conduct, unlike that of the suspects in Sprinkle but like the conduct of the suspects in Lender, was sufficiently evasive to elevate Officer McClure's suspicion of illegal activity. Fourth, Officer McClure, unlike the arresting officer in Sprinkle, specifically relied

6

on her practical experience as an undercover officer in forming her suspicion.

Accordingly, we conclude that this case is closer to Lender than to Sprinkle. Because Lender controls, the district court did not err in finding that Officer McClure had the requisite reasonable suspicion to justify an investigatory detention of White.

B.

White next argues that, even if his initial detention was lawful, the subsequent seizure of the gun from the passenger compartment of his car was unconstitutional. He argues primarily that his Miranda rights were violated, that the seizure of the gun was therefore "tainted," and that the inevitable discovery rule does not apply. The Government apparently concedes that there was a Miranda violation and that the gun is therefore tainted, but argues that the inevitable discovery exception to the exclusionary rule allows its introduction.* The district court agreed with the Government's position, ruling that Officer

_____

*We disagree with the district court's view that a Miranda violation automatically triggers the "fruit of the poisonous tree" doctrine. The fruit of the poisonous tree doctrine, as articulated in Wong Sun v. United States, 371 U.S. 471 (1963), applies only to constitutional violations. See Oregon v. Elstad, 470 U.S. 298, 307 (1985). Because the failure to administer Miranda warnings is not in itself a constitutional violation, the fruits of an unwarned statement are not "inherently tainted." See Correll v. Thompson, 63 F.3d 1279, 1290 (4th Cir. 1995) (distinguishing between confessions "obtained in violation of . .. Fifth Amendment rights" and those "obtained in technical violation of Miranda," and applying fruit of the poisonous tree analysis only to the former). In other words, if White's unwarned confession was not "involuntary" within the meaning of the Fifth Amendment, then the seizure of the gun would not be tainted. See United States v. Crowder, 62 F.3d 782, 786-88 (6th Cir. 1995) (noting that the fruit of the poisonous tree doctrine does not apply to evidence obtained as a result of an unwarned statement if the statement was voluntary under the Fifth Amendment), cert. denied, 116 S. Ct. 731 (1996); United States v. McCurdy, 40 F.3d 1111, 1116-17 (10th Cir. 1994) (same). Because the Government argues only that the inevitable discovery exception applies, however, we consider only that issue, and assume without deciding that White's statement was not "voluntary" under the Fifth Amendment. We also assume without deciding that White's consent to search the car was not voluntary, and we therefore conclude that there is no need for a remand to apply the voluntariness test articulated in United States v. Lattimore , 87 F.3d 647, 650 (4th Cir. 1996) (en banc).

McClure would have arrested White had he not been cooperative. In the district court's view, because Officer McClure then could have lawfully searched the vehicle -- either as a search incident to an arrest or during a subsequent inventory search -- discovery of the gun was inevitable.

As framed by the parties, then, the only issue is whether the inevitable discovery rule should apply here. In reviewing the district court's suppression ruling, the court reviews the district court's legal conclusions de novo and its factual findings for clear error. See United States v. McDonald, 61 F.3d 248, 254 (4th Cir. 1995). The district court found, as a fact, that "had Mr. White not been cooperative, Officer McClure would have arrested him. Accordingly, she would have arrested Mr. White and conducted a search incident to a lawful arrest." This finding is supported by Officer McClure's testimony. Therefore, because the district court's finding that Officer McClure would have arrested White had he not been cooperative is credible and is supported by the record, we affirm it as not clearly erroneous.

The remaining question is whether the district court properly applied the inevitable discovery rule to these facts. The inevitable discovery rule allows the admission of illegally seized evidence if the Government can prove "by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." Nix v. Williams, 467 U.S. 431, 444 (1984); see also United States v. George, 971 F.2d 1113, 1121 (4th Cir. 1992). Here, White argues that the inevitable discovery rule cannot "be applied only on the basis of the police officer's mere intention to use legal means subsequently . . . ." (Appellant's Br. at 11.) In other words, White's primary objection to the district court's ruling is that it relies on "speculative elements" instead of "demonstrated historical facts capable of ready verification or impeachment." (Appellant's Br. at 11 (citing Nix, 467 U.S. at 444 n.5).)

Unfortunately for White, he is wrong. In George , we accepted the government's theory that "even if the search warrant was defective and Leon's good faith exception inapplicable, the inevitable discovery doctrine would permit the introduction of the [illegally seized evidence] if the police would have found the blades pursuant to an inventory search of the lawfully impounded vehicle ." 971 F.2d at 1121

8

(emphasis added) (footnote omitted). Although the court excluded the evidence on factual grounds -- by concluding that the evidence would not have been found during such an inventory search -- George clearly supports the Government's position in this case. As noted above, the district court found that if White had not been "cooperative," or had not allowed the search of his car, then Officer McClure would have arrested him and searched the car incident to the arrest. During this search, she would have found the gun. Therefore, because the gun would have been discovered in any event, it was properly admitted.

III.

White next argues that, as applied to him, § 924(e) violates the Double Jeopardy Clause. His argument relies on the fact that his "prior 1991 conviction was a necessary element to the 18 U.S.C. Section 922(g)(1) charge. That same conviction was then used to establish a violation falling under the purview of 18 U.S.C. Section 924(e)(1)." (Appellant's Br. at 13.) In other words, he complains that he had only three prior violent or drug-related convictions, and that one of those three supported both the § 922(g) conviction and the § 924(e) enhancement.

Our circuit and others have rejected this argument. See United States v. Presley, 52 F.3d 64, 68 (4th Cir.) (holding, in a case where the defendant had only three prior convictions, that§ 924(e) "does not violate the Double Jeopardy Clause"), cert. denied, 116 S. Ct. 237 (1995); United States v. Bates, 77 F.3d 1101, 1106 (8th Cir.) (rejecting a challenge to "the constitutionality of using [a defendant's] prior felony convictions both to establish his substantive offense under section 922(g)(1) and to enhance his sentence under section 924(e)(1)"), cert. denied, 117 S. Ct. 215 (1996); United States v. Wallace, 889 F.2d 580, 584 (5th Cir. 1989) (rejecting defendant's argument that his sentence was in "violation of the double jeopardy clause . . . because one of his three prior felony convictions was `used' twice -- once to bring him within the scope of the substantive offense . . . and again to bring him within the scope of the sentence enhancement provision"). Accordingly, we affirm the district court's rejection of this claim.

9

IV.

White's final argument on appeal is that in light of <u>United States v. Lopez</u>, 115 S. Ct. 1624 (1995), § 922(g) exceeds Congress's power to legislate under the Commerce Clause. After White filed his brief, we decided <u>United States v. Wells</u>, 98 F.3d 808 (4th Cir. 1996), which forecloses this argument. In <u>Wells</u>, we concluded that "[t]he existence of this jurisdictional element [in § 922(g)], requiring the Government to show that a nexus exists between the firearm and interstate commerce to obtain a conviction under § 922(g), distinguishes <u>Lopez</u> and satisfies the minimal nexus required for the Commerce Clause." 98 F.3d at 811. Therefore, White's argument fails.

V.

In conclusion, we hold that reasonable suspicion supported the initial detention of White and that the seizure of the firearm was valid under the inevitable discovery exception. Moreover, we conclude that using the same prior conviction to sustain a substantive offense under § 922(g)(1) and an enhancement under § 924(e)(1) does not violate the Double Jeopardy Clause. Finally, we have already rejected the argument that § 922(g)(1) offends the Commerce Clause. Accordingly, we affirm.

<u>AFFIRMED</u>

10