# United States Court of Appeals
## For the First Circuit

No. 05-1250

UNITED STATES OF AMERICA,

Appellee,

v.

B.J. ALMEIDA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Torruella, Circuit Judge,

Campbell, Senior Circuit Judge,

and Howard, Circuit Judge.

Nicholas J.K. Mahoney for appellant.
Paula D. Silsby, United States Attorney, and Margaret D. McGaughey, Assistant United States Attorney, Appellate Chief, for appellee.

January 10, 2006

**HOWARD**, <u>Circuit Judge</u>.  B.J. Almeida appeals the district court's denial of his motion to suppress evidence introduced at trial that led to his conviction for possession with the intent to distribute five or more grams of cocaine base.  <u>See</u> 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(B).  We affirm.

**I.**

Police officers in Lewiston, Maine, placed a residence on Vail Street under surveillance after receiving information from reliable sources that drugs, including cocaine base, were being distributed from an apartment at this address.  While conducting the surveillance, Officer Gregory Boucher began to follow an automobile after he observed it pick up a passenger, noted by Boucher to be a black male, outside of the building.  He immediately called another officer, Eric Syphers for assistance.  After Officers Syphers and Boucher observed the car run a stop sign, Syphers used his marked police car to pull it over into a parking lot.  Officer Wayne Clifford arrived seconds later.

Officers Syphers and Clifford approached the car and spoke with the driver, a white male, who identified himself as Andrew Ash.  Another white male sitting in the front identified himself as Vernon Milliken, and a black male sitting in the back and on the right identified himself as B.J. Almeida.

Ash got out of the car and told Officer Syphers that Almeida had asked to be dropped off on Vail Street and then picked

up after calling Ash on his cellular telephone. This narrative was consistent with Officer Boucher's earlier observations. Officer Clifford received Ash's permission to conduct a pat-down search and discovered $1,000 in cash. This discovery raised Clifford's suspicion that the occupants of the car were parties to a drug deal. Ash told Officer Clifford that he had nothing to hide and that the officers were free to search his car. They did so and recovered a crack pipe, which later tested positive for cocaine residue, under the right front seat. Clifford also found marijuana in the car's center console.

The officers separated the suspects. Officers Clifford and Boucher spoke to Milliken, who said that he and Ash had picked up Almeida in Gray, Maine, driven him to Lewiston and then dropped him off so he could "score some crack" at the Vail Street apartment. Officer Clifford then turned to Almeida, identified himself as a police officer, and advised Almeida that officers had observed him purchasing or selling illegal drugs. Almeida denied the accusation and consented to a pat-down search, which yielded $851 in cash in a pocket of his pants. Meanwhile, Milliken told Officer Boucher that Almeida was concealing cocaine base between his legs. Officer Boucher approached Almeida, advised him that he knew that he had drugs in between his legs, and suggested that he "do the right thing" and surrender it. Almeida stated, "Yeah, I got something." Boucher observed him reach into his pants and

remove a clear plastic bag that contained 11.2 grams of cocaine base. A federal grand jury subsequently indicted the three men for trafficking in crack cocaine.

Almeida moved to suppress the statement he made admitting possession of drugs and his act of producing the cocaine base. He argued that his words and conduct were custodial "statements" obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966). At an evidentiary hearing before a magistrate judge, the government stipulated that Almeida was "in custody" for purposes of Miranda when Officer Boucher asked him to surrender the hidden crack, and that it would not offer Almeida's statement, "Yeah, I got something," in its case-in-chief. But the government also took the position that the manner in which it recovered the crack, and the crack itself, were admissible. One of the government's arguments was that, even if Almeida had not turned the crack over to Officer Boucher, inevitably the contraband would have been discovered. The government argued that probable cause to arrest Almeida existed after Officers Boucher and Clifford found the crack pipe and marijuana in the car, that the officers in fact would have arrested Almeida, and that, after the arrest, Almeida would have been strip-searched, and the drugs discovered, at the local jail. The magistrate judge agreed and recommended that the district court deny Almeida's suppression motion under the inevitable discovery doctrine. After the district court accepted the magistrate's

-4-

recommendation, Almeida entered a conditional guilty plea, reserving an appeal of the suppression ruling.

## II.

In assessing the denial of the suppression motion, we review the district court's factual findings for clear error and its legal conclusions de novo. See United States v. Maguire, 359 F.3d 71, 76 (1st Cir. 2004). As it did below, the government argues for the inevitable discovery exception to the exclusionary consequences of a Miranda violation. Almeida responds that the drugs were obtained in violation of Miranda, but has not, in his brief, challenged the asserted inevitable discovery basis for admitting the evidence. He has therefore waived his right to challenge the government's inevitable discovery assertion. But, even apart from the waiver, if we consider the inevitable discovery issue on the merits, we nevertheless believe that the district court correctly applied the inevitable discovery exception in these circumstances.[1]

The purpose of the exclusionary rule is to deter law enforcement officers from violating a defendant's rights. See United States v. Capozzi, 347 F.3d 327, 332 (1st Cir. 2003). The inevitable discovery exception recognizes that, if the evidence would have been discovered lawfully, "the deterrence rationale has

---

[1]We take no position on whether there was a Miranda violation in this case.

so little basis that the evidence should be received." <u>Nix</u> v. <u>Williams</u>, 467 U.S. 431, 444 (1984). The burden of proving that the exception applies rests with the government. <u>Id.</u>

In evaluating inevitable discovery claims, we ask three questions: first, whether the legal means by which the evidence would have been discovered was truly independent; second, whether the use of the legal means would have inevitably led to the discovery of the evidence; and third, whether applying the inevitable discovery rule would either provide an incentive for police misconduct or significantly weaken constitutional protections. <u>See</u> <u>United States</u> v. <u>Pardue</u>, 385 F.3d 101, 106 (1st Cir. 2004).

We begin by considering whether Almeida's arrest, which the government says would have set in motion the chain of events leading to the discovery of the crack, was truly independent of any interrogation that caused Almeida to turn over the drugs. An arrest is considered to be independent if (1) the police, in fact, would have arrested the defendant, even without first having discovered the challenged evidence, and (2) in the absence of the challenged evidence, the officers nevertheless had probable cause to make the arrest without the challenged evidence. <u>See, e.g.</u>, <u>United States</u> v. <u>Glenn</u>, 152 F.3d 1047, 1049-1050 (8th Cir. 1998); <u>United States</u> v. <u>Jones</u>, 72 F.3d 1324, 1331-1333 (7th Cir. 1995); <u>United States</u> v. <u>Moore</u>, 37 Fed. Appx. 963, 967 (10th Cir. 2002);

-6-

<u>United States</u> v. <u>White</u>, No. 95-5752, 1997 WL 159540, at *4 (4th Cir. Apr. 7, 1997) (unpublished disposition). Both conditions are met here.

The district court credited Officers Boucher's and Clifford's testimony that they would have arrested Almeida after discovering the crack pipe, and we see no basis in the record for upsetting that determination. Discovery of the pipe, made as a result of Ash's consent to search the car, preceded (and thus was independent of) Officer Boucher's request that Almeida turn over the drugs.

So too probable cause existed for the arrest; at the time of arrest, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." <u>Beck</u> v. <u>Ohio</u>, 379 U.S. 89, 91 (1964). Under federal law, a person is guilty of a crime if he or she actively or constructively possesses even a small quantity of crack cocaine. 21 U.S.C. § 844(a); <u>United States</u> v. <u>Jeffers</u>, 524 F.2d 253, 257 (7th Cir. 1975) (conviction under 21 U.S.C. § 844(a) requires only a "trace" of a controlled substance).

Here, the officers retrieved a crack pipe from beneath the seat directly in front of Almeida. The officers had previously witnessed Almeida enter and exit an apartment that they had been

reliably told was a place where crack was being dealt. Moreover, Milliken informed the officers that they had picked up Almeida for the express purpose of "scoring some crack," a substantial amount of cash was found on Almeida, and neither Ash nor Milliken admitted to possession of the pipe. This evidence, taken together, established probable cause for the officers to arrest Almeida prior to his having handed over the crack cocaine.

Turning to the question of whether the arrest inevitably would have led to the discovery of the concealed drugs, the government must demonstrate, to a high degree of probability, that the evidence would have been discovered. See United States v. Rogers, 102 F.3d 641, 646 (1st Cir. 1996).

Officers Boucher and Clifford testified that they would have transported Almeida to the Androscoggin County Jail after they arrested him, that the jail routinely strip-searched incoming detainees as part of its intake processing, and that the drugs would have been discovered at that time. Based on this testimony, the district court found that the drugs would have been discovered as a part of the routine search that would have followed Almeida's arrest. This finding is supported by the record and thus is not clearly erroneous. See Maguire, 359 F.3d at 76.

Finally, we consider whether applying the inevitable discovery doctrine in these circumstances would substantially weaken Miranda protections or encourage police misconduct. See

<u>Pardue</u>, 385 F.3d at 106. This inquiry is case specific and requires an appreciation of the societal costs of the exclusionary rule. <u>See</u> <u>United States</u> v. <u>Scott</u>, 270 F.3d 30, 45 (1st Cir. 2001).

Here, the government proved to the district court's satisfaction not only that the officers <u>could</u> have arrested Almeida, but also that the officers <u>would</u> have arrested Almeida, even had they not discovered the drugs he possessed. Because, as discussed above, the officers would have eventually seized the drugs by arresting Almeida (as they had planned to do before questioning him), they had little incentive to try to obtain the crack through unconstitutional means when a lawful means was readily available. <u>See</u> <u>id.</u> (concluding that this aspect of the inevitable discovery exception test was met where applying the exception would "not act as an incentive to unconstitutional behavior"). We therefore perceive no risk that applying the inevitable discovery exception in these circumstances will erode <u>Miranda</u> protections or encourage police misconduct.[2]

**III.**

For the reasons stated, we **<u>affirm</u>** Almeida's conviction and sentence.

---

[2]Almeida also contests his sentence on the ground that the district court declined to give him a downward departure because his criminal history score was inflated. The district court declined to grant the departure because it determined that, under the facts of the case, a departure was not warranted. The district court's decision is thus not reviewable. <u>See</u> <u>United States</u> v. <u>Kornegay</u>, 410 F.3d 89, 98 (1st Cir. 2005).