BOUDIN, Circuit Judge,
dissenting.
It is settled law that the police may not, without more, detain a suspect merely because he is present in a neighborhood where violent crime or drug dealing is common. Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). So, too, “mere presence” at the scene of a crime is not the same as guilt. United States v. Llinas, 373 F.3d 26, 32 (1st Cir.2004). But the devil is in the details, and the details here confirm that this is not a simple presence case and the police acted reasonably.
In January 2008, police were alerted by “911” calls that a street fight was in progress in a rough neighborhood of New Bed-ford, Massachusetts. One call identified many of the participants as members of the Latin Kings, a well known and dangerous street gang. See United States v. Lara, 181 F.3d 183 (1st Cir.1999). Officers of the New Bedford Police Gang Unit responded only to discover people scattering from the scene of the brawl — some of whom were recognized by officers as members of the gang.
Seeing two men he did not recognize leaving the scene, Sergeant Scott Carola directed Officers Adelino Sousa and David Conceicao to stop the two men. The two officers drove around the corner, pulled their police car into a driveway in front of the two men, and exited the car. Conceicao confronted one of the men, Louis Osario-Meléndez, and ordered him to place his hands on the hood of the police car. Sousa began to question the other man, Angel Camacho, and noticed that he was wet and breathing hard. Camacho conceded that he had seen the fight but said he was not involved.
Camacho kept his hands in his sweatshirt pockets and Sousa asked him to take them out; Camacho moved his hands out but kept them in front of his waistband where a gun could easily have been tucked. Drawing on his experience as a veteran policeman, Sousa tapped Camacho’s waist and felt the butt of a gun. After a struggle with Camacho, the police seized what turned out to be a .40 caliber handgun with an obliterated serial number, loaded magazine and a bullet in the chamber. Camacho’s arrest followed.
Camacho moved to suppress the gun as illegally seized. The district judge said that Camacho’s seizure was unlawful but that the seizure of the gun was justified by Camacho’s intervening crimes of shoving Officer Sousa and resisting arrest, which allowed a search incident to a lawful arrest and seizure of the gun. United States v. *732 Camacho, 608 F.Supp.2d 178, 185 (D.Mass. 2009). Camacho thereafter pled guilty to being a felon in possession and possessing a gun with an obliterated serial number, reserving his illegal seizure claim for this appeal.
The government on appeal stands by the district court’s reasoning that Camacho’s intervening actions — his independent crime of assaulting the officer by shoving him away — removed the taint of a supposedly unconstitutional stop and justified the subsequent seizure of the gun. The Supreme Court has upheld the admission of evidence seized after an unlawful search based on a series of exceptions and the circuit courts have followed suit.[6] We have a decision directly in point supporting the district judge, United States v. King, 724 F.2d 253 (1st Cir.1984), which the panel majority is unable to distinguish.
However, the predicate assumption— that the stop of Camacho was unlawful — is also mistaken, because in fact the police had “ ‘a particularized and objective basis’ for suspecting the person stopped of criminal activity.” Ornelas v. United States, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (quoting United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). We may affirm the decision below on any grounds supported by the record, see United States v. Mendoza-Acevedo, 950 F.2d 1, 3 (1st Cir.1991), and the Terry-stop issue is the more important and recurring issue.
Whether or not a gang fight is graded as a major crime, it is potentially a very serious matter. Sometimes such fights are about control of the neighborhood drug trade, stem from persistent violent rivalries or have the potential to create ongoing dangerous feuds. Deadly weapons may be used, just like the one carried by Camacho; fighters or passers-by may be injured or killed. This fight had provoked multiple 911 calls.
The officers in this case had every reason to suspect anyone scattering upon the arrival of the police. Although the officers did not recognize Camacho and his companion as gang members, in this instance the gang unit had been told at a briefing that the Latin Kings were importing gunmen from out-of-state to retaliate against another gang. Detaining any such persons was thus especially urgent and, once the participants fled the scene, further investigation was likely to be fruitless.
Wardlow said that presence in a high crime area was not alone enough for reasonable suspicion, 528 U.S. at 124, 120 S.Ct. 673, but the Court then added that presence in such an area was relevant, id., and that such presence coupled with other reasons for suspicion can furnish reasons for the stop. Id. at 124-25, 120 S.Ct. 673. The Wardlow Court continued:
In allowing such detentions, Terry accepts the risk that officers may stop innocent people. Indeed, the Fourth Amendment accepts that risk in connection with more drastic police action; persons arrested and detained on probable cause to believe they have committed a crime may turn out to be innocent. The Terry stop is a far more minimal intrusion, simply allowing the officer to briefly investigate further. If the officer *733 does not learn facts rising to the level of probable cause, the individual must be allowed to go on his way. But in this case the officers found respondent in possession of a handgun, and arrested him for violation of an Illinois firearms statute.
Id. at 126, 120 S.Ct. 673.
Directly in point is United States v. Brewer, 561 F.3d 676 (7th Cir.2009) (Posner, J.). There a police officer investigating a report of a fight at an apartment complex heard gunshots as he approached. A car passed in the opposite direction, the officer had it stopped by a second officer, and the defendant admitted that he had a gun in the car and on his person. The basis for suspicion was thin because other evidence linking the car to the gunfire was unknown to the officers at the time of the stop. Id. at 677-78.
But the unanimous Seventh Circuit panel made clear that not much suspicion was required for a brief investigatory stop, and what was present in Brewer sufficed:
When we consider the dangerousness of the crime, the brevity of the interval between the firing of the shots and the spotting of the sole vehicle quickly exiting, the minimal intrusion on the occupants of the vehicle, the need of the police to inform themselves of the conditions in the complex before endangering themselves by entering it in the dark, and the further need to stop potentially fleeing suspects until more information about the crime could be obtained, we conclude that the police acted reasonably. ...
561 F.3d at 679. One detail aside, which did not involve suspicion at all but rather officer safety, Brewer and the present case are twins.
Wardlow and Brewer quite properly set a low threshold of suspicion for a “minimal intrusion, simply allowing the officer to briefly investigate further.” Wardlow, 528 U.S. at 126, 120 S.Ct. 673. The suspicion may be modest; but the intrusion is similarly modest and the need for prompt inquiry is compelling. Brewer, 561 F.3d at 679. In questioning Camacho, the police acted reasonably. Reasonableness, as it happens, is the standard set by the Fourth Amendment itself.

. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (attenuation); United States v. Paradis, 351 F.3d 21 (1st Cir.2003) (same); Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) (inevitable discovery); United States v. Almeida, 434 F.3d 25 (1st Cir.2006) (same); Murray v. United States, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988) (independent source); United States v. Jadlowe, 628 F.3d 1 (1st Cir.2010) (same); United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (good faith exception); United States v. Belton, 520 F.3d 80 (1st Cir.2008) (same).