John Earle REDFEARN IV

v.

STATE of Alabama.

CR–14–0500.

Court of Criminal Appeals of Alabama.

April 29, 2016.

Davis Butterfield Whittelsey and Jonathan Keith Corley, Opelika, for appellant.

Luther Strange, atty. gen., and William D. Little, asst. atty. gen., for appellee.

WELCH, Judge.

John Earle Redfearn IV pleaded guilty to possessing a controlled substance, a violation of § 13A–12–213, Ala.Code 1975, and was sentenced to 32 months, which sentence was suspended and he was placed on 2 years' probation.[1]

In February 2012, police officers obtained a search warrant to search Redfearn and his residence after a confidential informant conducted three controlled buys with Redfearn. Of the controlled buys, 2 occurred at Redfearn's residence within 72 hours of police obtaining the search warrant. The confidential informant purchased from Redfearn "blue pills" consistent with oxycodone. (R. 15.)

Investigator Michael Rogers, a narcotics investigator with the City of Opelika, testified that the search warrant was executed on February 3, 2012. Before police executed the warrant they conducted surveillance of the area. Redfearn was seen leaving in an automobile and was stopped several miles from his residence. Investigator Rogers informed Redfearn that officers were in the process of executing a search warrant at his residence, and he handcuffed Redfearn and transported him back to his residence.

A search of Redfearn's residence revealed a total of 75 firearms, a bag of what appeared to be marijuana in the master bedroom, a glass smoking pipe on the bed in the master bedroom, and a "simulator hand grenade" in a dresser drawer in that same bedroom.

During the search a female came to the residence and identified herself as Redfearn's girlfriend. This female told police that Redfearn normally kept pills on his person. Lt. Ben Bugg of the Opelika Police Department assisted in the search of Redfearn's person. Lt. Bugg testified that he took Redfearn into a bathroom and thoroughly searched him, that he told Redfearn to unbutton his pants and pull down his underwear, and that when Redfearn pulled down his underwear two pill bottles fell out. Both bottles contained what appeared to be oxycodone pills.

 Redfearn moved to suppress all evidence seized as a result of the search. The circuit court denied the motion to suppress. Redfearn then pleaded guilty to the lesser offense of possessing a controlled substance and specifically reserved his right to appeal the circuit court's ruling denying his motion to suppress.[2]

---

1. Redfearn was indicted for trafficking in opium, possessing marijuana in the first degree, and possessing a destructive device or weapon. In exchange for Redfearn's plea of guilty to a lesser offense to the trafficking charge, the State agreed to nol-pros the other two charges. Because of confusion concerning the circuit court number that formed the basis of Redfearn's conviction, we remanded the case to the circuit court for that court to clarify the circuit court number. The circuit court certified to this Court that the correct circuit court number is CC–12–1190.

2. Because a voluntarily plea of guilty waives all nonjurisdictional defects in the proceedings before the plea, a defendant must "reserve his right to appeal an adverse ruling on a issue arising before the plea 'when the plea of guilty [is] entered.'" *Prim v. State*, 616 So.2d 381, 382 (Ala.Crim.App.1993). Further, "in the guilty-plea context, an issue relating to a defect occurring before the entry of the plea must be both preserved by a timely and specific motion and/or objection and an adverse ruling from the trial court and reserved for appeal before the entry of the plea." *Mitchell v. State*, 913 So.2d 501, 505

The search warrant read, in part, as follows:

"You are hereby ordered and authorized to forthwith search:

"The following person or place: For the person of John Earle Redfearn IV, alias and the residence located at the place described as follows: . . . . East University Drive. . . ., Auburn, Lee County, Alabama. Said residence is further described as a red brick condo with white trim and green shutters."

(C.R. 90.)

The affidavit in support of the search warrant provided:

"That within seventy-two hours from the date of this affidavit, a reliable informant was searched and equipped with body worn transmitter and furnished with money that had been copied and the serial numbers recorded at the Opelika Police Department. The informant was instructed to go to. . . . East University Drive. . . . in Auburn, Lee County, Alabama, and make a controlled buy from John Redfearn, alias at the residence. The informant met with John Redfearn, alias at the residence and purchased controlled prescription medication. After making the controlled drug buy from John Redfearn, alias the informant returned to a prearranged location and turned the prescription medication over to the Narcotic Officers."

(C.R. 91.)

In denying Redfearn's motion to suppress, the circuit court stated:

"Bailey v. United States [, —— U.S. ——, 133 S.Ct. 1031 (2013),] does not apply in this case although on its face it appears to be similar. In the present case, the search was made pursuant to a

valid warrant to search both [Redfearn] and the premises. In Bailey, the search warrant only applied to the premises. The police also had independent probable cause to detain [Redfearn] based on previous controlled buys where narcotics were purchased from [Redfearn], surveilled by law enforcement. At the hearing, Detective Rogers testified that he witnessed a controlled buy take place between [Redfearn] and another individual. These facts differ from Bailey where the individual was 'stopped and detained at some distance from the premises to be searched when the only justification for the detention was to ensure the safety and efficacy of the [premises] search.' Bailey v. United States, 133 S.Ct. 1031, 1035 (2013). In this case, the search warrant was issued for both the person and premises.

"Even if the search warrant were not applicable to [Redfearn's person, probable cause existed for a warrantless search, based upon the prior controlled buy, regardless of the subjective intent of the detaining officers. Regarding an officer's intent, '[a]s long as the police officer is doing only what is objectively authorized and legally permitted, the officer's subjective intent in doing it is irrelevant.' State v. Jemison, 66 So.3d 832 (Ala.Crim.App.2010) (citations omitted). Although the State stipulated that the officers stopped [Redfearn] due to the search warrant, there was independent probable cause based on the previously witnessed controlled drug buys. 'If officers elect to defer the detention until the suspect or departing occupant leaves the immediate vicinity [of the premises to be searched], the lawfulness of detention is controlled by other stan-

(Ala.Crim.App.2005). Redfearn both reserved and preserved the circuit court's ruling denying his motion to suppress.

dards, including, of course, a brief stop for questioning based on reasonable suspicion under *Terry [v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968),] or an arrest based on probable cause.' *United States v. McGowan,* No. CR–11–S–424–S, July 2, 2013] unpublished."

(C.R. 112–13.)

## I.

■ On appeal, Redfearn first argues that the search warrant did not authorize police to stop him in his vehicle several miles from his residence; therefore, he says, the items seized as a result of that stop must be suppressed. He relies on the United States Supreme Court's decision in *Bailey v. United States,* —— U.S. ——, 133 S.Ct. 1031, 185 L.Ed.2d 19 (2013), to support his argument.

In *Bailey,* police officers were in the process of executing a search warrant on Bailey's apartment when they saw Bailey leave in a vehicle. Bailey was about one mile from his apartment when police stopped his vehicle. The lower court held that the stop was lawful under *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981).[3] In reversing the lower court's decision, the Supreme Court limited its earlier holding in *Michigan v. Summers* and held that a suspect may be lawfully detained while police are conducting a search warrant when the person is in the "immediate vicinity" of the place to be searched. The *Bailey* Court held:

"Detentions incident to the execution of a search warrant are reasonable under the Fourth Amendment because the limited intrusion on personal liberty is outweighed by the special law enforcement interest at stake. Once an individual has left the immediate vicinity of a premises to be searched, however, detentions must be justified by some other rationale."

—— U.S. at ——, 133 S.Ct. at 1042–43.

Here, the State argues in its brief to this Court that *"Bailey* itself recognizes that its holding applies only to detentions based solely on the search, and not where the detention is otherwise justified based on probable cause or the reasonable suspicion required for a *Terry [v. Ohio,* 392 U.S. 1 (1968),] stop." (State's brief, at p. 7.) It asserts that the officers had probable cause to arrest Redfearn at the time his automobile was detained by police officers; therefore, it argues, the stop was outside the scope of *Bailey* and was lawful. We agree.

In discussing probable cause to arrest, the Alabama Supreme Court has stated:

"Probable cause exists if facts and circumstances known to the arresting officer are sufficient to warrant a person of reasonable caution to believe that the suspect has committed a crime. 'In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act....' *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, 1891 (1949). ' "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." ' *Id.* 'Probable cause to arrest is measured against an objective standard and, if the standard is met, it is

---

**3.** In *Michigan v. Summers,* the United States Supreme Court recognized three important law-enforcement interests that justified detaining an occupant during the execution of a search warrant: (1) officer safety in securing the premises; (2) facilitating the completion of the search; and (3) preventing flight.

unnecessary that the officer subjectively believe that he has a basis for the arrest.' The officer need not have enough evidence or information to support a conviction in order to have probable cause for arrest. Only a probability, not a prima facie showing, of criminal activity is the standard of probable cause. *Stone v. State*, 501 So.2d 562 (Ala.Cr. App.1986).' "

*Dixon v. State*, 588 So.2d 903, 906 (Ala. 1991).

■ Controlled buys are generally sufficient to furnish the necessary probable cause to arrest a suspect. *See United States v. Santiago*, 950 F.Supp.2d 361, 368 (D.R.I.2013) ("In this case ... [the police officer] had probable cause to arrest Mr. Santiago because he had witnessed the two controlled buys."); *United States v. Webster*, 625 F.3d 439, 444 (8th Cir.2010) ("After two controlled buys, Webster arrived at the scheduled place and time for a third controlled purchase, he discussed the death with the informant, and the informant provided the visual signal of walking toward the Family Dollar store to indicate to the officers that Webster possessed crack cocaine. These circumstances are sufficient for a finding of probable cause."); *Hernandez v. City of Union City*, 264 Fed. Appx. 221, 223 (3d Cir.2008) (not selected for publication in the *Federal Reporter*)("[P]olice officers had probable cause to arrest Appellant based on the detailed anonymous tip, the subsequent corroborating undercover investigation and controlled buy, and [police officer's] on-scene identification of Appellant."); *Commonwealth v. Martinez*, 24 Mass.L.Rptr. 247 (Superior Ct.2008)("[T]he information provided in the search warrant affidavit detailing the controlled buys conducted by the [confidential informant] provided sufficient probable cause to arrest Martinez."); *United States v. Bizier*, 111 F.3d 214, 219 (1st Cir.1997) ("It is uncontested that probable cause for an arrest did exist based on those two controlled buys in the previous two weeks. Thus, the search of Bizier immediately before his formal arrest could be justified as a search incident to arrest based on the controlled buys alone. See *Rawlings [v. Kentucky*], 448 U.S. [98] at 111, 100 S.Ct. [2556] at 2564–65 [ (1980) ].").

In a similar fact situation, the Louisiana Court of Appeals in *State v. Anderson*, 136 So.3d 275 (La.Ct.App.2014), explained:

"[The appellant] argues that his case is analogous to *Bailey [v. United States*, —— U.S. ——, 133 S.Ct. 1031 (2013),] because Mr. Lea [the codefendant] was arrested ten blocks from the target location and subsequently detained in a police car without probable cause. We disagree. In *Bailey*, unlike in the present case, there was no independent probable cause to arrest Mr. Bailey. The officers in *Bailey* had knowledge of a gun in an apartment based on information from a confidential informant. They had not previously observed Mr. Bailey in possession of the firearm and had not previously observed Mr. Bailey engage in any unlawful conduct. In the instant case, officers had independent probable cause to arrest Mr. Lea because they had reliable information that he had engaged in a drug transaction with a confidential informant. We find, considering the facts of his case, that the detention of Mr. Lea was lawful because the officers had probable cause to arrest based on the previous controlled purchase conducted by Det. [Kyle] Hinrichs.

" 'Probable cause exists when the facts and circumstances within the arresting officer's knowledge, and of which he has reasonable and trustworthy information, are sufficient to justify a man of

average caution in the belief that the person to be arrested has committed or is committing an offense.' *Gibson v. State,* 1999–1730, p. 7 (La.4/11/00), 758 So.2d 782, 788 [ (La.2000) ]. Det. Hinrichs testified at the hearing on the motion to suppress that the search warrant was obtained after he conducted a controlled substance purchase between a confidential informant and Mr. Lea at 2103 Baronne Street. Det. Hinrichs said that although Mr. Lea did not violate any law while he was driving his vehicle, he was stopped because he was recognized as the target of the search warrant. Det. Hinrichs had probable cause to believe that Mr. Lea distributed narcotics based on a prior drug exchange and investigation into Mr. Lea. Accordingly, Mr. Lea's detention was justified."

136 So.3d at 278.

Here, based on the three controlled buys that had been conducted using a confidential informant, police had sufficient probable cause to arrest Redfearn at the time he was stopped in his vehicle several miles from his residence. The circuit court correctly denied Redfearn's motion to suppress on this basis.

## II.

■ Redfearn next argues that the search warrant did not authorize police to strip-search Redfearn and that the search was not justified as a search incident to a lawful arrest.

The record shows that Redfearn was strip-searched after a search of his residence revealed marijuana and after Redfearn's girlfriend appeared at the apartment and told police that Redfearn normally kept pills on his person. A search of Redfearn revealed two pill containers hidden in his underwear.

The State first argues that the strip-search was authorized based on the information given to police by Redfearn's girlfriend. It cites *Hastings v. State,* 439 So.2d 204 (Ala.Crim.App.1983), to support its argument.

"Police officers were validly inside the appellant's home pursuant to this warrant.

"Officer Mote testified that he had been informed by his informant that the appellant had a quantity of narcotic drugs on his person which was secreted within some type of 'cavity' or other hiding place on the person of the appellant.

"A valid strip search of his person at the residence confirmed this information with the bottle being found underneath the appellant's large stomach, containing a number of pills, i.e., 13 yellow tablets, 19 beige tablets and 47 orange tablets.

"We are of the view that the opinion of the United States Supreme Court in *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), clearly authorized Officer Mote and his fellow officers to detain the appellant and conduct a search of his person inside the appellant's residence. Officer Mote's testimony clearly establishes that a valid reason existed for making this search at the residence, and the officers acted in a proper manner in detaining the actions of the arrestee once they were validly on the premises. *Washington v. Chrisman,* 455 U.S. 1, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982)."

*Hastings v. State,* 439 So.2d 204, 205–06 (Ala.Crim.App.1983). We agree with the State that *Hastings* supports the strip-search conducted in this case.

■ In the alternative, the State argues that the drugs in Redfearn's underwear would have been discovered when he was booked and searched at the Lee County

Detention Center. More specifically, it argues that the drugs would have been discovered inevitably and thus were admissible under that exception to the exclusionary rule.

In *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), the United States Supreme Court recognized that evidence illegally discovered by police may still be admissible if "the information ultimately or inevitably would have been discovered by lawful means." 467 U.S. at 444.

> "Under the inevitable-discovery exception, the prosecutor has the burden of demonstrating (1) that there is a reasonable probability that the evidence in question would have been discovered by lawful means but for the police misconduct; (2) that the leads making the discovery inevitable were possessed by the police at the time of the misconduct; and (3) that the police, before the misconduct, were actively pursuing the alternative line of investigation. *United States v. Cherry,* 759 F.2d 1196 (5th Cir.1985); *United States v. Brookins,* 614 F.2d 1037, 1043 (5th Cir.1980)."

*Kabat v. State,* 867 So.2d 1153, 1156 (Ala. Crim.App.2003).

Investigator Michael Rogers testified concerning the booking procedures used at the Lee County Detention Center. He said that each person booked is thoroughly searched, that their clothing is taken from them, and that they are provided with a uniform. (R. 38–39.) The search here was conducted pursuant to a search warrant, and Redfearn would have been arrested even if no drugs had been found on his person.

Certainly, the drugs that were in Redfearn's underwear would have been discovered inevitably when he was searched at the police station at the time he was charged and formally arrested. *See United States v. Almeida,* 434 F.3d 25, 29 (1st Cir.2006) ("[T]he district court found that the drugs would have been discovered as a part of the routine search that would have followed [the defendant's] arrest. This finding is supported by the record and thus is not clearly erroneous."); *United States v. Woolbright,* 641 F.Supp. 1570, 1578 (E.D.Mo.1986) ("Once a person has been arrested for a crime for which he will be incarcerated, his property will be searched. Any contraband will certainly be discovered."). We agree with the State that the inevitable-discovery doctrine would apply in this case.

Furthermore, as the circuit court correctly held in its order denying Redfearn's motion to suppress, the search of Redfearn's person was conducted pursuant to the parameters of the search warrant, which specifically instructed police to search Redfearn and his residence.

Courts, when discussing the reasonableness of the scope of a search conducted on an individual described in a search warrant, have said:

> "A warrant authorizing the search of a person for drugs and related paraphernalia allows the police to search for such evidence wherever it may normally be secreted, such as in clothes, boots, or on the body. See *United States v. Ross,* 456 U.S. 798, 820, 102 S.Ct. 2157, 2170, 72 L.Ed.2d 572, 591 (1982) ('A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found....'); *State v. Colin,* 61 Wash.App. 111, 809 P.2d 228, 229 (1991) (denying suppression of drugs discovered during execution of warrant to search defendant, who was made to remove his clothes)."

*State v. Watts,* 223 N.J. 503, 515, 126 A.3d 1216, 1223 (2015).

"[I]t is well known within the police community generally and expressly acknowledged by the officers in this case, that drug traffickers secrete drugs in their body cavities to avoid detection. Here, the police officers had more than reasonable, articulable suspicion that appellant, a known drug dealer, would be carrying contraband on his person or in his vehicle; they had a warrant, based on probable cause, authorizing the search of appellant and the vehicle he was driving for drugs. When a search of the vehicle from which appellant was known to distribute drugs and a search of his outer clothing did not reveal any drugs, we are persuaded that a strip search followed by a visual body cavity search was reasonable."

*Moore v. State,* 195 Md.App. 695, 724–25, 7 A.3d 617, 634–35 (2010). The circuit court correctly found that the strip-search of Redfearn was lawful.

For the foregoing reasons, we affirm the circuit court's ruling denying Redfearn's motion to suppress. Accordingly, Redfearn's conviction and sentence are due to be, and are hereby, affirmed.

AFFIRMED.

WINDOM, P.J., and KELLUM, BURKE, and JOINER, JJ., concur.