Rockingham
No. 2008-200

THE STATE OF NEW HAMPSHIRE

v.

SHAWN JOHNSON

Argued: March 18, 2009
Opinion Issued: July 23, 2009

*Kelly A. Ayotte*, attorney general (*Francesca Stabile*, attorney, on the brief and orally), for the State.

*Law Offices of Richard N. Foley*, of Portsmouth, (*Richard N. Foley* on the brief and orally), for the defendant.

BRODERICK, C.J. The defendant, Shawn Johnson, appeals an order of the Superior Court (*Lewis*, J.) denying his two motions to suppress. We affirm.

The following facts are not in dispute or are supported by the record. The defendant was charged with one count of manufacturing a controlled drug in violation of RSA 318-B:2 (2004) (amended 2008) and RSA 318-B:26, I(b)(6) (2004) (amended 2008). He filed two motions to suppress all evidence obtained by aerial observation and an on-the-ground warrantless search of his property at 11 Gebig Road in Nottingham. Following a hearing, the superior court denied both motions.

On August 18, 2006, the New Hampshire Division of State Police was using aerial surveillance to find cultivated marijuana in the Nottingham area. That morning, New Hampshire State Trooper Christopher Huse was conducting aerial surveillance in an Army helicopter flown by national guardsman Michael Pratt in the area of 81 Priest Road in Nottingham. When Huse and Pratt spotted what they believed was marijuana growing on the defendant's property, they directed police on the ground to locate the plants.

State Troopers James Mayers and Kathleen Grealy drove to the property and entered through a hedgerow behind the defendant's property and the neighboring property. The troopers walked through woods to a dirt track into an overgrown, sloping field behind the defendant's house, where they discovered several fertilized marijuana plants and a hose. Aided by the aerial observers, they found two additional marijuana patches in the same field. Both troopers testified that the sloping field consisted of tall brush, some of it waist-high. From where they stood at the bottom of the steep slope, they could see only the roof of the defendant's house. While entering and traversing the defendant's property, the troopers' path of travel was not blocked by any barriers.

At the hearing, the defendant presented evidence regarding his use of the field where the marijuana was found. He testified that his field is not visible or open to the public or to his neighbors and that he considers the

area private. He further testified that it is bordered by fencing and a stone wall, that he uses the field as a garden and that he regularly maintains the areas of the field that can be mowed. His daughter testified that she did not use the particular area of the property where the marijuana was found.

The trial court found that the field where the marijuana was located was "overgrown with waist-high plants," and that to reach the marijuana, "[Troopers] Mayers and Grealy entered the defendant's property along the boundary line and walked down a slope well away from the defendant's house . . . ." In sum, the record indicates that the area was located well away from the defendant's private daily activity in the home and that use of the area was minimal. The trial court concluded that the area at issue was not within the curtilage of the defendant's property, and that he had no reasonable expectation of privacy in it.

On appeal, the defendant argues that the aerial observation and on-the-ground warrantless search and seizure violated his right to privacy under Part I, Article 19 of the New Hampshire Constitution and the Fourth and Fourteenth Amendments to the United States Constitution. Specifically, he asserts that "[t]he cleared back yard behind [his] house was his curtilage where he exhibited a reasonable expectation of privacy." Additionally, he argues that the "aerial observation of [his] property" violated his right to privacy and did not fall within the plain view exception to the warrant requirement.

We first address the defendant's claim under the State Constitution, and cite federal opinions for guidance only. *State v. Ball*, 124 N.H. 226, 231-33 (1983). In reviewing the trial court's order on a motion to suppress, we accept its factual findings unless they lack support in the record or are clearly erroneous. Our review of the trial court's legal conclusions, however, is *de novo*. *State v. Sullivan*, 157 N.H. 124, 129 (2008).

"Our State Constitution protects all people, their papers, their possessions and their homes from unreasonable searches and seizures." *State v. Goss*, 150 N.H. 46, 48 (2003) (quotation omitted). As we noted approvingly in *State v. Pinkham*, 141 N.H. 188 (1996), "certain property surrounding a home deserves the same protection against unreasonable searches and seizures as the home itself." *Pinkham*, 141 N.H. at 190 (citing *United States v. Dunn*, 480 U.S. 294, 300 (1987)). Such areas, often described as curtilage, were traditionally accorded constitutional protection and required either a warrant or circumstances falling within a recognized exception to the warrant requirement before they could be entered or searched. *But see id.* at 191 (holding that defendant's driveway, though within the curtilage of his home, was not protected from police

entry due to its semi-private nature indicating an implied invitation to those having a legitimate reason for entering the property).

█ The boundaries and contents of the curtilage are not easily described. Curtilage questions are fact-sensitive, and courts resolve them by examining the nature of the area at issue and then asking whether such an area is as deserving of protection from governmental intrusion as the house. We have stated[] [that] [t]he curtilage includes those outbuildings which are directly and intimately connected with the habitation and in proximity thereto and the land or grounds surrounding the dwelling which are necessary and convenient and habitually used for family purposes and carrying on domestic employment.

*Id.* at 190 (quotation and italics omitted).

█ We agree with the trial court that the area where the marijuana was found was not within the curtilage of the defendant's home. The area was not necessary, convenient and habitually used for family purposes or for carrying on domestic employment. Under the facts of this case, we further agree with the trial court that the defendant had no reasonable expectation of privacy in the specific area of his property at issue. *Cf. Goss*, 150 N.H. at 48-49 (adopting reasonable expectation of privacy analysis under the New Hampshire Constitution).

Our affirmance of the trial court's conclusion that the State Police did not need a warrant to search the sloping, overgrown area behind the defendant's house and seize the marijuana plants is consistent with our prior decisions involving similar facts. *See State v. Pinder*, 128 N.H. 66, 74 (1986) (no warrant required to search "open fields" of defendant's property); *State v. Hanson*, 113 N.H. 689, 690-91 (1973) (no warrant required for search of garden located in a field surrounded on three sides by woods a quarter mile from defendant's home). Our holding is also consistent with decisions of other state and federal jurisdictions reached under similar circumstances. *See, e.g., United States v. Davis*, 530 F.3d 1069, 1077-84 (9th Cir. 2008) (no warrant required to enter area of rural property surrounded by dense woods, 200 feet from dwelling, blocked by an electric gate and posted with "No Trespassing" signs); *United States v. Boyster*, 436 F.3d 986, 991-92 (8th Cir. 2006) (no warrant required to search field 100 yards from residence); *People v. Mayoff*, 729 P.2d 166, 171-74 (Cal. 1986) (no warrant required for aerial surveillance of suspicious vegetation in a secluded, mountainous area at least 200 feet from trailers that might be residences).

The Federal Constitution provides no greater protection than the State Constitution with regard to the defendant's claims of error. *See State v.*

*Johnston*, 150 N.H. 448, 452 (2004); *Florida v. Riley*, 488 U.S. 445, 450-52 (1989); *Oliver v. United States*, 466 U.S. 170, 176-84 (1984). Accordingly, we reach the same result under the Federal Constitution.

We now turn to the defendant's second argument, that the aerial observation of his property violated his right to privacy and did not fall within the plain view exception to the warrant requirement. We have not previously had occasion to address whether, or under what circumstances, aerial observation may constitute a search under the New Hampshire Constitution, and we need not do so here. The defendant moved to suppress only the marijuana plants seized during the search of the overgrown, sloping field behind his house. The defendant's motions to suppress were limited as such, as no other items were seized from any other areas of his property. Having already concluded that no warrant was required to search the field where the marijuana was found, even if we assume, without deciding, that the aerial observation constituted a search, no constitutional violation occurred.

*Affirmed.*

DALIANIS, DUGGAN and HICKS, JJ., concurred.