Hillsborough-southern judicial district
No. 2009-737

## THE STATE OF NEW HAMPSHIRE

v.

## DAVID ORDE

Argued: October 21, 2010
Opinion Issued: November 30, 2010

262

*Michael A. Delaney*, attorney general (*Stephen D. Fuller*, senior assistant attorney general, on the brief and orally), for the State.

*Denner Pellegrino, LLP*, of Boston, Massachusetts (*Jeffrey A. Denner & a.* on the brief, and *Bruce D. Levin* orally), and *Laurence B. Cote*, of Boston, Massachusetts, on the brief, for the defendant.

HICKS, J. The defendant, David Orde, appeals his conviction for manufacture of a controlled drug. *See* RSA 318-B:2 (Supp. 2009). On appeal, he argues that the Superior Court (*Barry*, J.) erred by denying his motions to suppress. We reverse and remand.

The record supports the following facts. On July 29, 2008, Officer Angelo Corrado of the Hollis Police Department went to the defendant's home to serve a dog complaint. The defendant's home is in a residential neighborhood, with trees lining the edge of his property. The driveway leading from the road to the home is approximately thirty or forty feet long and nothing restricted Corrado from entering the driveway. Corrado parked in the defendant's driveway and went to the side door of the house, which faces the driveway. From the side door and the driveway, Corrado could see the deck attached to the side of the home, approximately thirty feet from the side door.

Corrado knocked on the side door, but no one answered. In an attempt to find someone at the home, Corrado went around to the deck. While there is no path from the side door to the deck, the deck does have a set of stairs that is visible from the side door. Lilac bushes line one side of the deck, but Corrado was able to walk "in between" the lilac bushes where there was "a little bit of an opening." Corrado then walked up the stairs and onto the deck, where he saw marijuana plants.

Upon seeing the marijuana plants, Corrado contacted his supervisor, Sergeant Richard Mello. Mello went to the defendant's home and confirmed that the plants were marijuana. He then had police dispatch contact the defendant at his nearby farm and ask him to come to the home. When the defendant arrived at the home, Mello told the defendant that the police "were there to serve a dog summons but he'd have to answer to the plants on the porch." The defendant proceeded to make incriminating statements and was arrested.

After the defendant's arrest, Mello obtained a warrant to search the defendant's home. The application for the search warrant was based upon the marijuana plants found on the deck, the defendant's statements to Mello, and the existence of a garden hose that went into the defendant's basement. Upon executing the search warrant, the police discovered additional incriminating evidence.

The defendant sought to suppress the marijuana plants found on the deck, his statements to Mello and evidence obtained through the search warrant. The trial court denied the defendant's motions to suppress. The defendant now appeals the trial court's rulings.

First, we address the defendant's argument that the trial court erred in denying his motion to suppress all evidence obtained from the deck. The defendant asserts that the officer's warrantless presence on the deck violated his constitutional right to privacy because the deck is protected curtilage, *see* N.H. CONST. pt. I, art. 19; U.S. CONST., amend. IV, and that no exception to the warrant requirement applies. The State argues that a warrant was not required because the defendant neither exhibited an actual expectation of privacy in his deck nor would any such expectation be recognized by society as reasonable.

"In reviewing the trial court's order on a motion to suppress, we accept its factual findings unless they lack support in the record or are clearly erroneous. Our review of the trial court's legal conclusions, however, is *de novo.*" *State v. Johnson*, 159 N.H. 109, 111 (2009).

We decide this case based upon our interpretation of the New Hampshire Constitution, using federal law only as a guide to our analysis. *See State v. Pinkham*, 141 N.H. 188, 189 (1996). Because we reverse under the State Constitution, we need not reach the federal issue. *State v. Ball*, 124 N.H. 226, 237 (1983).

■ "Our State Constitution protects all people, their papers, their possessions and their homes from unreasonable searches and seizures." *State v. Goss*, 150 N.H. 46, 48 (2003) (quotation omitted). We have recognized that an expectation of privacy plays a role in the protection afforded under Part I, Article 19 of the New Hampshire Constitution. *State v. Robinson*, 158 N.H. 792, 796 (2009). In *Goss*, we adopted a two-part analysis for determining whether there is a reasonable expectation of privacy: "first, that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as reasonable." *Goss*, 150 N.H. at 48 (quotation omitted). Absent an invasion of the defendant's reasonable expectation of privacy, there has been no violation of the defendant's rights under Part I, Article 19. *Robinson*, 158 N.H. at 796.

■ Our State Constitution "particularly protects people from unreasonable police entries into their private homes, because of the heightened expectation of privacy given to one's dwelling." *Goss*, 150 N.H. at 48 (quotation omitted). We have previously recognized that certain property surrounding a home, often described as curtilage, deserves the same protection against unreasonable searches and seizures as the home itself.

*State v. Johnston*, 150 N.H. 448, 452 (2004). We have since held that curtilage is only protected if there is a reasonable expectation of privacy in the curtilage. *See id.* We are mindful that curtilage questions are fact-sensitive. *Id.* Thus, we first determine whether the officer's warrantless entry upon the defendant's deck violated his reasonable expectation of privacy. *Id.*

We begin by addressing the trial court's conclusion that the defendant did not exhibit an expectation of privacy in the deck. The defendant's property is lined with trees. There is no evidence that the deck could be seen from the road. The side of the deck facing the road is lined with lilac bushes, further shielding the deck from passersby. Although Corrado testified that from the side door of the home he could see the deck steps and the existence of the deck, there is no evidence that he could see whether anything or anyone was on the deck. There is no path leading from the side door of the home to the deck steps. Further, the lilac bushes near the deck would impede any perceived route from the door to the deck because, as Corrado testified, in order to get to the deck he had to walk "in between" the lilac bushes where there was "a little bit of an opening."

█ Under these facts, the defendant exhibited an expectation of privacy in his deck. The defendant made efforts to obscure the deck and the activities on the deck from public view. There is no evidence that the deck was visible from the road. The placement of the deck and the lilac bushes prevented Corrado, or any other member of the public, from viewing the activities on the deck from the driveway. The defendant further exhibited an expectation of privacy in his deck by not creating a path connecting the side door with the deck steps and placing the lilac bushes in between the side door and the deck. Accordingly, we conclude that the trial court erred, as a matter of law, in finding that the defendant did not exhibit an expectation of privacy.

█ We next consider whether the defendant's expectation of privacy in his deck is one that society is prepared to recognize as reasonable. This determination is "highly dependent on the particular facts involved and is determined by examining the circumstances of the case in light of several factors," including "the nature of the intrusion, whether the government agents had a lawful right to be where they were, and the character of the location searched," which entails examining "whether the defendant took normal precautions to protect his privacy." *Com. v. Krisco Corp.*, 653 N.E.2d 579, 582-83 (Mass. 1995); *see also Rakas v. Illinois*, 439 U.S. 128, 152-53 (1978) (Powell, J. concurring) (recognizing that no single factor is determinative but noting that the United States Supreme Court has looked to normal precautions taken to maintain privacy, how a person has used a

location, and whether the type of government intrusion was perceived as objectionable by Framers of Fourth Amendment).

Considering the facts of this case in light of the factors listed in *Krisco*, we believe that the defendant's expectation of privacy in his deck is one that society is prepared to recognize as reasonable. We first consider whether Corrado had a lawful right to be on the defendant's property. A police officer has a right to enter a person's curtilage on legitimate business. *Pinkham*, 141 N.H. at 191. However, this right is not unlimited, as an officer has no "greater right to intrude onto [a person's] property than any other stranger would have." *State v. Ohling*, 688 P.2d 1384, 1385-86 (Or. Ct. App.), *review denied*, 691 P.2d 483 (Or. 1984). In *Pinkham*, we held that when there is an access route on the property, such as a driveway or a sidewalk, members of the public have an "implied invitation" to use it. *Pinkham*, 141 N.H. at 191. We later recognized that a person has no reasonable expectation of privacy in access routes. *Johnston*, 150 N.H. at 452. "[T]he direct access routes to the house, including parking areas, driveways and pathways are areas to which the public is impliedly invited, and . . . police officers restricting their activity to such areas are permitted the same intrusion and the same level of observation as would be expected from a 'reasonably respectful citizen.' " *State v. Cada*, 923 P.2d 469, 477 (Idaho Ct. App.), *review denied* (Idaho 1996). Accordingly, "there can be no reasonable expectation of privacy as to observations made from such areas." *State v. Clark*, 859 P.2d 344, 349 (Idaho 1993).

> Thus, when the police come on to private property to conduct an investigation or for some other legitimate purpose and restrict their movements to places visitors could be expected to go (e.g., walkways, driveways, porches), observations made from such vantage points are not covered by the Fourth Amendment. But other portions of the lands adjoining the residence are protected, and thus if the police go upon these other portions and make observations there, this amounts to a Fourth Amendment search, . . . even if these other portions are themselves clearly visible from outside the curtilage.

1 W. LAFAVE, SEARCH AND SEIZURE § 2.3(f), at 600-03 (4th ed. 2004). "Although [an] officer . . . may have . . . good reason to believe that someone was at [a person's] house, [he] ha[s] no more legal right to continue to look for that someone after . . . knocking prove[s] unproductive than anyone else would have." *Ohling*, 688 P.2d at 1386. Thus, despite Corrado's initial lawful entry on the property, his departure from the obvious paths on the property and entrance onto the defendant's deck exceeded his implied invitation onto the property.

 Next we consider the character of the deck and how the defendant used it. As we previously noted, the deck falls within the home's curtilage, which has traditionally been accorded constitutional protection. *See Pinkham*, 141 N.H. at 190. Although we have recognized that not all curtilage is protected, *id.* at 191; *see Johnston*, 150 N.H. at 452, the fact that the defendant's deck is attached to the home and used for family activities weighs in favor of a finding that society is prepared to recognize his expectation of privacy in the deck as reasonable. *See Johnson*, 159 N.H. at 112 (no reasonable expectation of privacy in overgrown area not within curtilage of defendant's home). The defendant testified that his deck is an outdoor living space used for dining, barbequing, and sunbathing. We believe that society is prepared to recognize a reasonable expectation of privacy in curtilage used for such personal and family activities.

 "An examination of the character of the location should include a determination whether the defendants owned the place or controlled access to it as well as whether the place was freely accessible to others." *Krisco*, 653 N.E. 2d at 582-83. The defendant owns the deck as it is attached to his home. It is located on the defendant's private property in a residential neighborhood, on a lot surrounded by trees and is approximately thirty feet from the road. Given the location of the deck, the lilac bushes, and the lack of a sidewalk or path leading to the deck, we conclude that the defendant likely controls access to the deck. Finally, the defendant took the precautions necessary to prevent others from viewing the deck and the activities occurring upon the deck. Considering the facts of this case and the *Krisco* factors, we believe that the defendant's expectation of privacy in his deck is one that society is prepared to recognize as reasonable.

 Because the defendant had a reasonable expectation of privacy in his deck, a warrant or an exception to the warrant requirement was needed for the officer to lawfully enter the defendant's deck. *See State v. Sawyer*, 145 N.H. 704, 706 (2001) ("Warrantless police entries are *per se* unreasonable and thus illegal unless made pursuant to a judicially created exception."). The State does not argue that any such exception applies to the warrantless entry in this case. Therefore, the entry onto the deck was unlawful and all evidence obtained from the deck should have been suppressed. *See State v. Santana*, 133 N.H. 798, 803, 809 (1991) (warrantless entry in violation of Part I, Article 19 of the State Constitution requires suppression of evidence).

 Relying on *United States v. Daoust*, 916 F.2d 757, 758 (1st Cir. 2009), and *United States v. Raines*, 243 F.3d 419, 421 (8th Cir.) *cert. denied*, 532 U.S. 1073 (2001), the State asserts that the marijuana was validly seized

pursuant to the plain view exception of the warrant requirement. The plain view exception does not apply, however, because Officer Corrado's initial intrusion onto the deck was not lawful. *See State v. Nieves*, 160 N.H. 245, 247 (2010). Although neither the *Daoust* nor the *Raines* courts conducted a reasonable expectation of privacy analysis, they apparently assumed the police could lawfully walk around a person's property provided they are on the property for a legitimate police activity, such as interviewing a person or serving civil process. We disagree. Permitting police such wide latitude to enter a person's private property is "incompatible with and detrimental to our citizens' strong right of privacy." *State v. Canelo*, 139 N.H. 376, 387 (1995).

We next consider whether the defendant's statements and the evidence obtained under the search warrant must also be suppressed as fruit of the illegal search. *See State v. McGurk*, 157 N.H. 765, 771 (2008). The fruit of the poisonous tree doctrine requires the exclusion from trial of evidence derivatively obtained through a violation of Part I, Article 19 of the New Hampshire Constitution. *Id.* If the evidence in question has been obtained only through exploitation of an antecedent illegality, it must be suppressed. *Id.* Accordingly, the question to be resolved is whether, granting establishment of the primary illegality, the evidence has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. *Id.*

In determining whether the taint of a Part I, Article 19 violation has been purged, we consider the following factors: "(1) the temporal proximity between the police illegality and the acquisition of the evidence sought to be suppressed; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct." *Id.* (quotation, brackets and ellipses omitted). Here, the taint of the Part I, Article 19 violation was not purged before the defendant made incriminating statements to the police. The defendant made the statements immediately after being confronted with the illegally seized evidence; there were no intervening circumstances. Further, Sergeant Mello induced the defendant to speak about the illegally seized evidence by stating that the defendant would have "to answer to the plants on the porch." Because the taint of the illegal search was not purged, the defendant's statements are the fruit of the illegal search and must be suppressed. *Id.*; *see also State v. Pinder*, 126 N.H. 220, 225 (1985) (statements suppressed as fruit of illegal search where defendant was confronted with illegally obtained evidence, he made statements directly related to that evidence, and there was "no intervening event that would have removed the taint" from the statements).

■ Finally, we consider the evidence obtained from the search of the defendant's home pursuant to the search warrant. Part I, Article 19 requires that search warrants be issued only upon a finding of probable cause. *State v. Zwicker*, 151 N.H. 179, 185 (2004). Probable cause exists if a person of ordinary caution would justifiably believe that what is sought will be found through the search and will aid in a particular apprehension or conviction. *Id.* To establish probable cause, the affiant need only present the magistrate with sufficient facts and circumstances to demonstrate a substantial likelihood that the evidence or contraband sought will be found in the place to be searched. *Id.* A warrant based in part upon illegally seized evidence is nonetheless valid so long as there was enough other evidence to establish probable cause. *State v. Plch*, 149 N.H. 608, 620 (2003), *cert. denied*, 540 U.S. 1009 (2003). Thus, to test the validity of a search warrant issued upon an affidavit referencing illegally seized evidence, the reviewing court excises the tainted information and examines the remaining information to determine whether it establishes probable cause. *Id.*

■ The search warrant in this case was based upon: (1) the marijuana plants on the deck; (2) the defendant's statements to Mello; and (3) the observation of "a garden hose being fed into the bulkhead which leads to the basement giving the possibility that there may be additional plants being grown and cultivated in the basement." Because we find that the marijuana plants on the deck and the defendant's statements were illegally obtained, they cannot be used to establish probable cause for the search warrant. *See id.* Assuming that the officer was able to lawfully view the garden hose, this, alone, cannot establish probable cause that evidence of illegal drug manufacturing is occurring on the property. Accordingly, any evidence obtained through the search warrant must be suppressed.

In light of our holding that the defendant's motion to suppress evidence should have been granted and that the statements and the search warrant are excluded as fruits of the poisonous tree, we need not rule on the defendant's alternative arguments or the trial court's denial of the defendant's motion to suppress statements. Accordingly, we reverse the trial court's ruling on the motion to suppress evidence and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

BRODERICK, C.J., and DUGGAN and CONBOY, JJ. concurred; DALIANIS, J., dissented.

DALIANIS, J., dissenting. I would affirm the trial court's denial of the defendant's motion to suppress because I do not believe that the defendant exhibited a reasonable expectation of privacy in his deck. The trial court

found that the deck was visible from the driveway and the side door. There were no gates, fences, or other impediments between the side door to the home and the deck. The defendant did not erect a "No Trespassing" sign. There were steps leading to the deck that were visible from the side door. Although there was no visible path leading from the side door to the deck, the existence of the steps suggests that visitors are welcome to access the deck from that direction. The lilac bushes only lined one side of the deck and serve a decorative function. Thus, under these facts, I conclude that the defendant had no expectation of privacy in his deck.

In *Johnston*, 150 N.H. at 452, we held that the defendant had no reasonable expectation of privacy in the curtilage of his home where the curtilage was visible from the road, no shrubs or fences hid the curtilage, there was no "No Trespassing" sign and no gate blocked the entrance to the curtilage. The only distinction between *Johnston* and the facts of this case is that in *Johnston*, the curtilage was visible from the road, whereas here, the evidence only supports a finding that the deck was visible from the driveway and the side door. Because the officer could lawfully be in the driveway and at the side door, *see Pinkham*, 141 N.H. at 190-91, I discern no meaningful distinction between the defendant's failure to exhibit an expectation of privacy in *Johnston* and the facts of this case.