Grafton
No. 2010-728

THE STATE OF NEW HAMPSHIRE

v.

PATRICIA SMITH

Argued: October 20, 2011
Opinion Issued: January 13, 2012

*Michael A. Delaney*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Sisti Law Offices*, of Chichester (*Mark L. Sisti* on the brief and orally), for the defendant.

HICKS, J. The defendant, Patricia Smith, appeals the decision of the Superior Court (*Vaughan*, J.) denying her motions to suppress. We affirm.

The following facts are not in dispute or are supported by the record. The defendant was charged with one felony count of manufacturing marijuana, a controlled drug. *See* RSA 318-B:2 (2011). She moved to suppress evidence obtained when the police searched her property on November 20, 2009. Following a hearing, the superior court denied her motion. The defendant then filed a supplemental motion to suppress, which the court also denied.

In September 2009, the Grafton County Sheriff's Department received a tip that the defendant was growing marijuana inside her house at the corner of Deerfield Drive and Lakeside Drive in Haverhill. In response, Detective Frederic James III began an investigation by obtaining the defendant's electric bills from the power company, which indicated unusually high usage year-round. He then learned from the New Hampshire Department of Employment Security that the defendant was likely working without paying taxes, self-employed, or not working at all. He also drove past the defendant's house and noticed two air vents, one of which he described in the affidavit accompanying the warrant application as a "typical dryer-style vent" and the other as a "powered exhaust vent." His suspicions thus aroused, Detective James enlisted Sergeant Gary Prince of the New Hampshire State Police to help him investigate the matter further.

On November 12, 2009, James and Prince went to the defendant's property after dark and entered a wooded area behind her home to conduct surveillance. Several minutes later, they observed a power vent turn on; soon after, they smelled an odor of fresh marijuana permeating the air. Ten minutes later, the vent turned off and the smell dissipated. About an hour later, the vent again turned on, and the officers again smelled fresh marijuana in the air. When they left the wooded area, they no longer smelled the odor of marijuana.

On November 15, James and Prince again entered the wooded area behind the defendant's home, and again noted a correlation between the activation of the power vent and an odor of fresh marijuana. They also noticed that the odor was not present when they walked away from the defendant's house, but became stronger when they approached the house. They made similar observations on a visit to the wooded area behind the defendant's house on November 17.

On the basis of their observations on the three nights during which they visited the woods behind the defendant's house, James and Prince obtained a warrant to search it. The defendant moved to suppress evidence obtained during the search, arguing that the officers should have obtained a search warrant before entering the wooded area and that the search warrant for the house lacked probable cause.

At the suppression hearing and in the affidavits supporting the warrant, both James and Prince explained that they had substantial training in detecting the odor of fresh marijuana. James testified that they entered an unmaintained wooded area behind the defendant's property and throughout their surveillance of her house stayed well behind a stone wall separating the woods from a mowed lawn. He estimated that the defendant's property was one-third of an acre in size. He also testified that they retrieved information about the property lines from the registry of deeds

and tried to measure where the defendant's property ended to avoid entering it. He admitted, however, that they crossed onto her property during their investigation. The superior court denied the defendant's motion to suppress, concluding that the officers did not enter the defendant's curtilage and that the evidence presented to the judge established the requisite probable cause.

When reviewing a trial court's ruling on a motion to suppress, we accept the trial court's findings unless they lack support in the record or are clearly erroneous. *State v. Beauchemin*, 161 N.H. 654, 656 (2011). We review legal conclusions *de novo*. *Id.*

The defendant argues that the police violated Part I, Article 19 of the State Constitution because they entered the curtilage of her home without first obtaining a warrant. She argues that she had a reasonable expectation of privacy in the wooded area behind her home because of its close proximity to the house itself and because the police did not make their observations from a public vantage point. The State contends that the defendant had no such reasonable expectation of privacy because the area searched, though in close proximity to her home, was outside the home's curtilage.

Part I, Article 19 of our State Constitution protects all people, their papers, their possessions and their homes from unreasonable searches and seizures. *State v. Goss*, 150 N.H. 46, 48 (2003). To receive constitutional protection in the area searched in this case, the defendant must have exhibited a subjective expectation of privacy in the area and that expectation must be one that society is prepared to recognize as reasonable. *Goss*, 150 N.H. at 48-49.

We have long adhered to the common law principle that certain property surrounding a home deserves the same protection against unreasonable searches and seizures as the home itself. *State v. Pinkham*, 141 N.H. 188, 190 (1996); *State v. Pinder*, 128 N.H. 66, 74 (1986). Such areas, known as curtilage, were traditionally accorded constitutional protection and required either a warrant or circumstances falling within a recognized exception to the warrant requirement before they could be entered or searched. *State v. Johnson*, 159 N.H. 109, 111 (2009). The boundaries and contents of the curtilage are not easily described. *Pinkham*, 141 N.H. at 190. We have stated that the curtilage includes those outbuildings that are directly and intimately connected with the habitation and in proximity thereto and the land or grounds surrounding the dwelling which are necessary and convenient and habitually used for family purposes and carrying on domestic employment. *Johnson*, 159 N.H. at 112; *Pinkham*, 141 N.H. at 190. Curtilage questions are fact-sensitive, and courts resolve

them by examining the nature of the area at issue and then asking whether such an area is as deserving of protection from governmental intrusion as the house. *Johnson*, 159 N.H. at 112.

We assume, without deciding, that the defendant has exhibited a subjective expectation of privacy in the wooded area behind her home.

■ In deciding whether the defendant's expectation of privacy is reasonable, several factors guide our inquiry: the nature of the intrusion, whether the police had a lawful right to be where they were, and the character of the location searched. *State v. Orde*, 161 N.H. 260, 265 (2010). The character of the location searched is analyzed with reference to the following additional factors: the area's proximity to the dwelling, *see Johnson*, 159 N.H. at 112; its inclusion within a general enclosure surrounding the dwelling, *see Johnston*, 150 N.H. at 452; its use and enjoyment as an adjunct to the domestic economy of the family, *State v. Hanson*, 113 N.H. 689, 691 (1973); and whether the defendant owned the place or controlled access to it and whether it was freely accessible to others, *see Orde*, 161 N.H. at 267. These factors are in accord with the United States Supreme Court's oft-cited decision in *United States v. Dunn*, 480 U.S. 294, 301 (1987) (listing four factors as relevant to whether a person has a reasonable expectation of privacy in areas surrounding the home: proximity to the home; presence of enclosures around both the home and the area claimed to be curtilage; nature of the area's uses; and steps taken by the resident to protect the area from observation by passersby). No single factor is dispositive; the critical question these factors help to answer is whether a particular area claimed to be within the curtilage is "necessary and convenient and habitually used for family purposes and carrying on domestic employment." *Johnson*, 159 N.H. at 112; *see also Pinkham*, 141 N.H. at 190; *accord Dunn*, 480 U.S. at 301 (focusing on whether an area is "so intimately tied to the home itself that it should be placed under the home's 'umbrella' of protection").

■■ We agree with the trial court that the defendant had no reasonable expectation of privacy in the area from which the police officers observed her house and smelled an odor of marijuana emanating from its air vent. First, although Sergeant Prince and Detective James may have had no independent right or invitation to cross onto the defendant's property, they made an effort to ascertain its boundary line and stay on the neighbor's side of it. *Cf. Orde*, 161 N.H. at 266 ("[A]n officer has no greater right to intrude onto a person's property than any other stranger would have." (quotation and brackets omitted)). Moreover, crossing over the defendant's property line is not equivalent to crossing into her home's curtilage. *See Hanson*, 113 N.H. at 691 (holding, on federal grounds, that "there was no unconstitu-

tional search even though the officers may have been trespassing"). Further, whether the police had a right to be where they were must be considered in context of the "open fields" doctrine, which recognizes implicitly that a trespass alone does not necessarily invade a property owner's reasonable expectation of privacy. *See Dunn*, 480 U.S. at 304 ("[T]here is no constitutional difference between police observations conducted while in a public place and while standing in the open fields."); *Oliver v. United States*, 466 U.S. 170, 180 n.11 (1984) ("[T]he term 'open fields' may include any unoccupied or undeveloped area outside of the curtilage. An open field need be neither 'open' nor a 'field' as those terms are used in common speech. For example, . . . a thickly wooded area nonetheless may be an open field as that term is used in construing the Fourth Amendment.").

■■■ Inquiry into the character of the area searched establishes that the woods behind the defendant's home fall outside her curtilage. While the officers conducted their search within approximately fifty to seventy feet of the defendant's home, proximity alone is not dispositive because there is no fixed distance at which curtilage begins or ends. *See, e.g., Bleavins v. Bartels*, 422 F.3d 445, 451 (7th Cir. 2005) ("[Proximity] tends to be very case-specific, and its significance is highly dependent on other factors."); *State v. Martwick*, 604 N.W.2d 552, 560 (Wis. 2000). The other factors present in this case strongly support the superior court's conclusion that the police did not enter the curtilage of the defendant's home. For example, no general enclosure, such as a fence or row of hedges, surrounded both the house and the wooded area. There is no indication that the defendant used the wooded area as an adjunct to her home, nor was any evidence adduced at the hearing that the defendant used the "unmaintained" forest for domestic purposes. *Cf. United States v. Jenkins*, 124 F.3d 768, 773 (6th Cir. 1997) (concluding that defendant's backyard was part of curtilage in light of its use as a garden and the presence of a clothes-line). Although the defendant owned the area in question, she took no steps to limit access to it from outsiders; any neighbors or passersby could see or walk freely into the woods. In fact, the only identifiable demarcation of curtilage was a stone wall on the outer edge of her manicured lawn. *See Oliver*, 466 U.S. at 182 n.12 ("[F]or most homes, the boundaries of the curtilage will be clearly marked; and the conception defining the curtilage — as the area around the home to which the activity of home life extends — is a familiar one easily understood from our daily experience."). On these facts, we agree with the trial court that the wooded area in question was not necessary, convenient to, and habitually used for family purposes. Accordingly, the defendant had

no reasonable expectation of privacy in the area searched, and, under the State Constitution, the police were not required to obtain a warrant to search it.

■ Next, the defendant argues that, without the information gathered during the three nighttime intrusions onto her property, the search warrant lacked probable cause. In light of our determination that the police officers did not violate the State Constitution when they entered the woods behind the defendant's home, we agree with the trial court that the information contained in their affidavits established probable cause to issue a warrant to search her home.

The defendant also argues that her supplemental motion to suppress should have been granted because the issuing judge did not take notes detailing a twenty-minute conversation he had by telephone with Detective James and Sergeant Prince. Because we conclude that the information contained in the four corners of the warrant application provided probable cause to support the search warrant, we need not address the defendant's final argument.

*Affirmed.*

DALIANIS, C.J., and DUGGAN, CONBOY and LYNN, JJ., concurred.