NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

—————————————————

Carroll
No. 2020-0167

THE STATE OF NEW HAMPSHIRE

v.

DANIEL DAVIS

Argued: February 18, 2021
Opinion Issued: October 28, 2021

Gordon J. MacDonald, attorney general (Zachary Lee Higham, attorney, on the brief and orally), for the State.

Stephen T. Jeffco, P.A., of Portsmouth (Stephen T. Jeffco on the brief and orally), for the defendant.

BASSETT, J. The defendant, Daniel Davis, appeals his conviction on one count of possession of a controlled substance with intent to sell. See RSA 318-B:2, I (2017). He challenges an order of the Superior Court (Ignatius, J.) denying his motion to suppress evidence obtained during a warrantless entry into the enclosed porch of his residence and subsequent warrantless entry into the interior. He also argues that the trial court erred when it did not suppress evidence seized during a subsequent search of his residence pursuant to a search warrant because the warrant was predicated upon evidence obtained during the two prior unlawful intrusions. The State counters that both entries were lawful and, therefore, the later warrant search of the defendant's residence was also lawful. Because we agree with the defendant that the

evidence obtained during the two warrantless entries was unlawfully acquired, and that the search warrant's reliance on that evidence renders it invalid, we reverse and remand.

The following facts are taken from the trial court's order denying the defendant's motion to suppress, are established by the evidence submitted at the suppression hearing, or are undisputed. On April 6, 2019, an officer from the Conway Police Department received a tip that marijuana was being grown inside a residential mobile home in Conway. A local business owner informed the officer that, during a recent service call to the residence, he observed several marijuana plants. The officer, joined by a second officer, visited the residence later that day to speak with the occupant.

The residence is comprised of a mobile home and a structurally distinct addition running nearly its entire length (hereinafter referred to as the "enclosed porch" or "porch"). The porch is rectangular, enclosed on all four sides, and has a pitched roof that is slightly lower than the mobile home's roof. The interior wall of the porch is contiguous with one wall of the mobile home. Its three exterior walls are covered with siding or shingles, except the top third of the longest exterior wall, which has windows. At the front end of the porch, there is a set of stairs that leads up to an exterior wooden door with a window and a curtain. The back end of the porch also has a door with a window. Various items are stored inside the enclosed porch, including furniture and appliances. A few feet past the front exterior door and to the right, another door leads from the interior of the porch to the interior of the mobile home.

When the officers arrived at the property, they parked on the street approximately thirty feet away from the residence. From this vantage point, the officers observed that all the windows of the mobile home itself were covered with black plastic. The windows of the enclosed porch were not covered. Through the porch windows, the officers observed electrical wiring and piping protruding from the mobile home into the porch, which they identified as consistent with indoor marijuana cultivation. The officers also observed that the door between the porch and the interior of the mobile home was closed. As the officers approached the residence, they could smell the odor of fresh marijuana.

The officers found the exterior door unlocked, entered the porch, and knocked on the interior door. In response, the occupant asked the officers to identify themselves. The officers identified themselves as police officers and asked the occupant to come to the door. They received no response. In the silence that followed, the officers could hear fans running inside the mobile home, which they considered additional evidence of indoor marijuana cultivation. The officers knocked on the door several more times, each time announcing themselves as police and asking the occupant to come to the door. After repeatedly receiving no response, they left the porch.

As the officers walked away from the residence, they heard loud "crashing" and "banging" noises coming from inside the mobile home. Because the officers believed the occupant was destroying evidence, they reentered the porch and entered the mobile home through the interior door. Inside, the officers discovered evidence of marijuana cultivation, including marijuana plants. They located the defendant in a back hallway of the mobile home and placed him under arrest. The officers subsequently obtained a search warrant, searched the residence pursuant to that warrant, and seized evidence, including marijuana plants and U.S. currency. Based in part on that evidence, a grand jury indicted the defendant on one count of possession of a controlled drug (marijuana) with intent to sell. See RSA 318-B:2, I.

The defendant moved to suppress all evidence derived from the officers' "unlawful entry and subsequent search of his residence." He argued that the evidence forming the basis of the search warrant affidavit had been "acquired as a result of the initial illegal entry of [his] residence" in violation of his rights under the State and Federal Constitutions. At the hearing on the motion, the State offered the testimony of one of the officers who participated in the warrantless entry of the residence. The defendant also testified and offered into evidence several exhibits depicting the residence. He clarified that he was challenging the warrantless entries into the enclosed porch and the interior of the mobile home and the search warrant's reliance on evidence obtained during those intrusions.

The trial court denied the defendant's motion to suppress. It concluded that the officers' entry into the enclosed porch was lawful because the defendant lacked a legitimate expectation of privacy in the porch, and that the officers' warrantless entry into the interior of the mobile home was justified under the exigent circumstances exception to the warrant requirement. Because the court concluded that both challenged entries were lawful, it ruled that the evidence seized pursuant to the search warrant was lawfully obtained and that the defendant's constitutional rights had not been violated. The defendant was convicted of possession of a controlled drug with intent to sell and this appeal followed.

On appeal, the defendant argues that any evidence obtained during the officers' warrantless entries into the porch and the interior of the mobile home and any evidence seized pursuant to the search warrant should have been suppressed under Part I, Article 19 of the State Constitution and the Fourth and Fourteenth Amendments to the Federal Constitution. See N.H. CONST. pt. I, art. 19; U.S. CONST. amends. IV, XIV. With respect to the warrantless intrusions, he argues that the officers' warrantless entry into the enclosed porch was unlawful because he had a legitimate expectation of privacy in the porch, and that the officers' warrantless entry into the mobile home was not justified by the exigent circumstances exception to the warrant requirement. Regarding the search warrant, the defendant asserts that the search warrant

3

affidavit would not have supported probable cause but for the inclusion of observations the officers made during their unlawful, warrantless entries into the enclosed porch and the interior of the mobile home.  The State counters that both warrantless intrusions were lawful, and, therefore, the search warrant was valid.  We agree with the defendant that any evidence obtained during the warrantless entries and any evidence acquired pursuant to the search warrant should have been suppressed.

When reviewing a trial court's ruling on a motion to suppress, we accept the trial court's factual findings unless they lack support in the record or are clearly erroneous, and we review its legal conclusions de novo.  State v. Smith, 163 N.H. 169, 172 (2012).  The defendant invokes both the State and Federal Constitutions in challenging the trial court's denial of his motion to suppress.  Following our standard practice, we first address the defendant's claim under the State Constitution and rely on federal law only to aid our analysis.  State v. Ball, 124 N.H. 226, 231-33 (1983).

We first address the defendant's argument that the officers' warrantless entry into the enclosed porch was unlawful because he had a legitimate expectation of privacy in that area.  Part I, Article 19 of the State Constitution provides, in relevant part, that "[e]very subject hath a right to be secure from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions."  N.H. CONST. pt. I, art. 19.  This protection against unreasonable searches extends only to those places in which the accused maintains a legitimate expectation of privacy.  See State v. Robinson, 158 N.H. 792, 796 (2009).  In other words, there is no "search" triggering constitutional protection unless the defendant's legitimate expectation of privacy has been intruded upon by the State.  See id.; In re Anthony F., 163 N.H. 163, 165-66 (2012).

To determine whether the defendant has a legitimate expectation of privacy in a particular area, we engage in a two-part analysis.  State v. Goss, 150 N.H. 46, 48-49 (2003).  First, we consider whether the defendant has exhibited a subjective expectation of privacy and, second, whether that expectation is one that society is prepared to recognize as reasonable.  Id. at 49.  Whether society will recognize a particular individual's expectation of privacy as reasonable does not turn on whether a hypothetical reasonable person would hold the same expectation of privacy, but, rather, "whether the expectation of privacy is justified or legitimate based upon our societal understanding regarding what deserves protection from government invasion."  State v. Gates, 173 N.H. 765, 771 (2020) (quotation omitted).

Part I, Article 19 of the State Constitution "particularly protects people from unreasonable police entries into their private homes, because of the heightened expectation of privacy given to one's dwelling."  Goss, 150 N.H. at 48 (quotation omitted).  We have previously recognized that "certain property

4

surrounding a home, often described as curtilage, deserves the same protection against unreasonable searches and seizures as the home itself." State v. Orde, 161 N.H. 260, 264 (2010). "The boundaries and contents of the curtilage are not easily described." Smith, 163 N.H. at 172. But, generally, curtilage includes those outbuildings that are directly and intimately connected to, and in proximity to, the home, and the land or grounds surrounding the dwelling which are necessary, convenient, and habitually used for family purposes and the carrying on of domestic employment. Id.

The State argues that our task is to apply our two-part expectation of privacy analysis to determine whether the porch is part of the curtilage of the residence, and, therefore, subject to constitutional protection. We assume, without deciding, in the State's favor that this is the proper inquiry. In addition, at oral argument, the parties agreed that the State bore the burden of proof at the suppression hearing to show that the entries into the property and the subsequent warrant search were lawful. We proceed on the assumption that the State bore the burden of proof at the suppression hearing.

We first consider whether the defendant exhibited a subjective expectation of privacy in the porch. Although the trial court did not decide this issue, its findings provide a sufficient basis for us to do so as a matter of law. See Goss, 150 N.H. at 48-49 (adopting expectation of privacy framework and deciding, in the first instance, that defendant exhibited subjective expectation of privacy); United States v. Rheault, 561 F.3d 55, 59 (1st Cir. 2009) (concluding defendant exhibited subjective expectation of privacy despite fact that trial court had not ruled on the issue).

The touchstone of the subjective expectation of privacy inquiry is whether the defendant sought to "preserve as private" the area at issue. Katz v. United States, 389 U.S. 347, 351 (1967). For example, in Orde, we concluded that the defendant had exhibited a subjective expectation of privacy in an unenclosed deck attached to his home because he had taken "efforts to obscure the deck and the activities on the deck from public view" by lining the deck with bushes. Orde, 161 N.H. at 263, 265. We also found significant the fact that the defendant had restricted public access to the deck by not creating a path connecting the main entrance of the house to the steps leading to the deck. Id. at 265; see also Goss, 150 N.H. at 49 (concluding that defendant exhibited subjective expectation of privacy in his trash by placing "it in black plastic bags with the expectation it would be picked up by authorized persons for eventual disposal"); Fernandez v. State, 63 So. 3d 881, 883 (Fla. Dist. Ct. App. 2011) ("[A]ffirmatively taking express steps to exclude the public or other persons from using the area, seeing into it, or gaining access to the area are ways to establish such a subjective manifestation." (quotation and ellipsis omitted)).

5

Here, the defendant took steps to limit access to the porch and protect the interior from public view. The entire porch is enclosed and the entrance to the porch is obstructed by a closed wooden door containing a window — not merely a transparent screen or storm door. And, although the officers could see into the porch from the street, that view was limited. Looking up at the windows lining the top part of the porch from the vantage point of the street, approximately thirty feet from the residence, the officers could see portions of tall items, such as the refrigerator and water heater. But the trial court did not find, and there is no evidence in the record, that the officers could see shorter items, such as the table and chairs, from the street. Given the defendant's efforts to preserve his privacy, we conclude that he exhibited a subjective expectation of privacy in the porch.

The State argues that the defendant's claim that he had an expectation of privacy in the porch is defeated because, at the suppression hearing, the defendant never testified that he had a subjective expectation of privacy in the porch. We reject the proposition that the defendant's failure to so testify is fatal to his claim. The State has not cited, nor have we found, a case in which we held that a defendant's testimony is necessary to prove that he or she exhibited a subjective expectation of privacy. Cf. Orde, 161 N.H. at 265, 267 (observing that defendant testified at suppression hearing but relying solely on defendant's conduct in concluding that he exhibited a subjective expectation of privacy).

In fact, we have repeatedly concluded that a defendant's conduct is sufficient to establish that he or she exhibited a subjective expectation of privacy. See id. at 265 (concluding that defendant exhibited subjective expectation of privacy based on his efforts to obscure deck from public view and limit access to it); Gates, 173 N.H. at 778 (holding that defendant exhibited subjective expectation of privacy in utility closet of apartment building by storing potentially incriminating boots there); Goss, 150 N.H. at 49 (concluding that defendant exhibited expectation of privacy in his trash by placing it in black plastic bags); see also Rheault, 561 F.3d at 59 (rejecting government's argument that defendant lacked subjective expectation of privacy because he failed to testify to that effect at the suppression hearing). Here, the defendant took steps to preserve his privacy in the porch, and, therefore, we conclude that he exhibited a subjective expectation of privacy in that area.

We next consider whether the defendant's expectation of privacy in the enclosed porch is one that society is prepared to recognize as reasonable. See Goss, 150 N.H. at 48-49. The parties agree that the following factors should guide our inquiry: whether the police had a lawful right to be on the porch, and the character of the porch. See Orde, 161 N.H. at 265. We typically consider the character of the location at issue with reference to several additional factors, including the area's proximity to the dwelling, its inclusion within a general enclosure surrounding the dwelling, its use and enjoyment as an

6

adjunct to the domestic economy of the family, whether the defendant owned the place or controlled access to it, whether it was freely accessible to others, Smith, 163 N.H. at 173, and whether the defendant took normal precautions to protect his privacy, Orde, 161 N.H. at 265. No single factor is dispositive. Smith, 163 N.H. at 173.

The defendant argues that his expectation of privacy in the porch is objectively reasonable because the porch is attached to the mobile home, enclosed, and is not part of the access routes on the property to which the officers had an implied invitation. The State counters that the officers had an implied invitation to enter the enclosed porch because it leads to the "main door" of the residence, which is visible from the street, and there is no knocker or doorbell outside the exterior door. The State also argues that the character of the porch weighs against recognizing an objectively reasonable expectation of privacy because: its structure, appearance, and contents demonstrate that it is not used as a living space; its windows are not covered with black plastic like the mobile home windows; and its nature as an enclosed space is not dispositive. We agree with the defendant.

We consider first whether the officers had a lawful right to be inside the enclosed porch. We have held that "when there is an access route on the property, such as a driveway or a sidewalk, members of the public have an 'implied invitation' to use it" and, therefore, "a person has no reasonable expectation of privacy in access routes." Orde, 161 N.H. at 266. "The direct access routes to the house, including parking areas, driveways and pathways are areas to which the public is impliedly invited, and police officers restricting their activity to such areas are permitted the same intrusion and the same level of observation as would be expected from a 'reasonably respectful citizen.'" Id. (quotation, brackets, and ellipsis omitted).

Here, a "reasonably respectful citizen" would have approached the residence via the access route of the steps and knocked on the exterior door. At that point, the visitor would be able to observe the exterior wooden door, that the doorknob has a visible keyhole, indicating that the door can be locked, and that the address number of the residence is located next to the exterior door. A visitor could also observe — from the street or through the window of the door — that the occupant stores personal items on the porch. In light of these facts, a reasonably respectful visitor would understand that his or her implied invitation extends only to the threshold of the exterior door, and no further. Cf. United States v. Wilson, No. 08-CR-2020-LRR, 2009 WL 905709, at *5-8 (N.D. Iowa Mar. 30, 2009) (unpublished) (finding mudroom of defendant's home within scope of Fourth Amendment protection when the home's address number was outside mudroom, keyhole of exterior storm door was visible, and visitors could see that defendant stored valuable items inside mudroom).

The fact that the porch connects the exterior door and the ostensible "main door" of the residence does not, as the State argues, make this case like State v. Beauchemin, 161 N.H. 654 (2011). In that case, we held that the defendant had no expectation of privacy in an unenclosed porch that led to the main door of his house because the porch was "a place visitors could be expected to go in order to knock on the front door." Beauchemin, 161 N.H. at 655, 657 (quotation omitted). By contrast, here, the space at issue is enclosed and features a closed wooden exterior door with adjacent address numbers — a door a reasonably respectful visitor would not enter without permission. As the Maine Supreme Judicial Court has observed, "The mere presence of a hallway in the interior of a single family dwelling, without more, is not in itself an invitation to the public to enter nor a foregoing by the occupants thereof of their expectancy and right of privacy." State v. Crider, 341 A.2d 1, 4 (Me. 1975) (finding defendant had objectively reasonable expectation of privacy in "hallway" connecting outer and inner door of single-family residence).

Nor are we persuaded by the State's argument that the absence of a door knocker or doorbell on or near the exterior door signals that a visitor is impliedly invited to enter through the exterior door to announce themselves at the interior door. There is no evidence in the record that there was a doorbell or knocker on the interior door that would differentiate it from the porch door or signify that it was truly the "main door" to the residence. The fact that the defendant does not have a doorbell, knocker, or anything in addition to the exterior door itself, does not diminish his reasonable expectation of privacy. For all these reasons, we conclude that the implied invitation onto the access routes of the property did not extend into the porch, and, therefore, the officers did not have a lawful right to be there. This factor weighs in favor of recognizing an objectively reasonable expectation of privacy.

We next consider the character of the porch, with reference to the additional factors outlined above. See Smith, 163 N.H. at 173. To the extent those factors are relevant to the facts of this case, several of them weigh in favor of recognizing an objectively reasonable expectation of privacy in the porch. Chief among them is the fact that the porch is attached to the mobile home. Compare Orde, 161 N.H. at 267 (concluding that defendant had reasonable expectation of privacy in deck in part because it was attached to his home), with Smith, 163 N.H. at 173-75 (finding that defendant lacked reasonable expectation of privacy in wooded area fifty to seventy feet behind her residence). This factor weighs in favor of recognizing an objectively reasonable expectation of privacy.

The evidence also shows that the defendant uses the porch as a living space. The enclosed porch is a finished room that contains a stored table and multiple chairs, a bookshelf containing several items, and a stored refrigerator and water heater. The nature of the room and the presence of furniture and personal effects demonstrate the area's use as an extension of the interior of

the home itself.  See Orde, 161 N.H. at 267 (finding that defendant had reasonable expectation of privacy in deck, which was used as an outdoor living space for dining, barbecuing, and sunbathing); State v. Boggs, No. 19-0862, 2020 WL 6483983, at *2-3 (Iowa Ct. App. 2020) (unpublished) (observing that presence of furniture and other items inside enclosed porch indicated porch's use for "intimate activities associated with domestic life and the privacies of the home").

We do not agree with the State that the fact that the refrigerator and water heater are not in use and appear to be stored on the porch demonstrates that the porch is not used as a living space.  On the contrary, those items are of value, and the fact that the defendant stores them inside the enclosed porch, rather than outside or elsewhere, shows that the porch is an adjunct to the home.  Similarly, it is of no moment that the items stored on the porch might, to some, appear to be in disarray.  See Boggs, 2020 WL 6483983, at *3.

Nor are we convinced by the State's argument that the porch cannot be characterized as a living space because it is structurally distinct from the mobile home, has a broken window, and the door at the back end of the porch is not "airtight."  Individuals who reside in less well-constructed dwellings and those who live in more substantial, sturdier structures are equally guaranteed the protections of Part I, Article 19 of the State Constitution.  See 1 Wayne R. LaFave, Search and Seizure: A Treatise on The Fourth Amendment, § 2.3(b), at 768 (6th ed. 2020); see also Katz, 389 U.S. at 351 ("[T]he Fourth Amendment protects people, not places."); United States v. Ross, 456 U.S. 798, 822 (1982) ("[T]he most frail cottage in the kingdom is absolutely entitled to the same guarantees of privacy as the most majestic mansion.").  The fact that the exterior of the enclosed porch looks different from the rest of the residence and that it may be in need of repair does not change the character of the structure as a fully enclosed, finished room, nor does it materially alter its possible uses.

For all these reasons, the evidence demonstrates that the defendant utilizes the enclosed porch as a living space, i.e., as an extension of his home. This factor weighs heavily in favor of recognizing an objectively reasonable expectation of privacy in the porch.  See Orde, 161 N.H. at 267; Boggs, 2020 WL 6483983, at *2-3; see also In the Matter of Lallo, No. 1997CA00426, 1998 WL 525561, at *3 (Ohio Ct. App. Aug. 17, 1998) (unpublished) (concluding that defendant had reasonable expectation of privacy in front porch because it was enclosed, attached to the house, had a front screen door, and was used as a living space).

In addition, the defendant took normal precautions to protect his privacy in the enclosed porch.  See Orde, 161 N.H. at 265.  As discussed above in relation to the defendant's subjective expectation of privacy, the defendant endeavored to preserve his privacy in the porch by enclosing it, restricting access to it with a closed wooden door, and limiting the public's view into it

from the street due to the fact that the windows line only the top third of the porch.  We are not convinced by the State's argument that the fact that the defendant covered the windows of the mobile home with black plastic — but not the windows of the porch — proves otherwise.  Our inquiry is whether the defendant took "normal precautions to protect his privacy," id. (quotation omitted), in the area at issue; not whether he took measures to protect his privacy elsewhere.  Thus, this factor also weighs in favor of recognizing an objectively reasonable expectation of privacy in the porch.

On the other hand, no general enclosure, such as a fence or row of hedges, surrounds the mobile home and the porch to block the public's view of the property from the street.  Cf. Smith, 163 N.H. at 174-75.  Although this fact weighs against the defendant, viewed in the context of the other facts relevant to the character of the porch, see id. at 173, we conclude that, on balance, the character of the porch weighs in defendant's favor.

Considering all the facts discussed above, we conclude that the defendant's expectation of privacy in the porch is one that society is prepared to recognize as reasonable.  Because the defendant had both a subjective and an objective expectation of privacy in the porch, a warrant or an exception to the warrant requirement was needed for the officers to lawfully enter that area.  See Orde, 161 N.H. at 267.  The State does not argue that an exception to the warrant requirement justified their initial entry into the porch. We therefore conclude that the warrantless entry into the porch was unlawful, and any evidence obtained while on the porch was unlawfully acquired.  As the State conceded at oral argument, it follows from this conclusion that any evidence the officers gained during their warrantless entry into the interior of the mobile home was tainted by that prior illegality and, therefore, any evidence acquired during the warrantless intrusion into the mobile home was also unlawfully obtained.

To the extent the State argues that the information and observations obtained during the warrantless entry into the interior are nevertheless admissible based on the inevitable discovery exception to the warrant requirement, we are not persuaded.  As the State observes, we have not had occasion to decide what the State must prove in order for the inevitable discovery doctrine to apply.  State v. Broadus, 167 N.H. 307, 314 (2015).  Even assuming, as the State asserts, that the standard set forth in United States v. Almeida applies here, we cannot conclude that the State has met its burden.  See United States v. Almeida, 434 F.3d 25, 28, 29 (1st Cir. 2006) (explaining that, for inevitable discovery doctrine to apply, the government must demonstrate that "the legal means by which the evidence would have been discovered was truly independent," that there was a "high degree of probability" that the evidence would inevitably have been discovered by such means, and that applying the doctrine would not "provide an incentive for police misconduct or significantly weaken constitutional protections").

Under the inevitable discovery doctrine, illegally seized evidence is admissible if a search was justified, and the evidence discovered illegally would inevitably have come to light in a subsequent legal search. Broadus, 167 N.H. at 313. The first prong of the three-prong standard articulated in Almeida inquires "whether the legal means by which the evidence would have been discovered was truly independent." Almeida, 434 F.3d at 28. The State argues that this "truly independent" inquiry is met here because the officers had ample evidence to establish probable cause before entering the porch and would have obtained a warrant based solely on that information if exigent circumstances — presumably the noises coming from inside the mobile home as they walked away from the residence — had not intervened. However, the State fails to point to any evidence in the record, and we have found none, that demonstrates that the officers would have pursued and obtained a warrant based solely on the information gained and the observations made prior to their unlawful entry onto the porch. Cf. United States v. Soto-Peguero, 978 F.3d 13, 20 (1st Cir. 2020) (affirming trial court's application of inevitable discovery doctrine based, in part, on officer's testimony that "he would have pursued a warrant" regardless of what was found during unlawful protective sweep of apartment); see also United States v. Allen, 159 F.3d 832, 842 (4th Cir. 1998) ("The inevitable discovery doctrine cannot rescue evidence obtained via an unlawful search simply because probable cause existed to obtain a warrant when the government presents no evidence that the police would have obtained a warrant. Any other rule would emasculate the Fourth Amendment."). We therefore conclude that the State has not met its burden of demonstrating that the inevitable discovery exception to the warrant requirement justified admission of any observations or information acquired during the warrantless intrusion of the mobile home.

However, this conclusion does not end our inquiry. The defendant also argues that any evidence later seized pursuant to the search warrant should have been suppressed because the search warrant affidavit would not have established probable cause absent inclusion of observations the officers made during their two unlawful intrusions. The State does not dispute that, during the two intrusions, the officers made observations that were set forth in the affidavit supporting the challenged search warrant. Accordingly, we must decide whether, despite the inclusion of unlawfully obtained evidence in the search warrant affidavit, the warrant remains valid.

Part I, Article 19 of the State Constitution requires that all search warrants be issued only upon a finding of probable cause. State v. Zwicker, 151 N.H. 179, 185 (2004). A search warrant that was acquired based on unlawfully obtained information or evidence is invalid, see State v. Hanson, 113 N.H. 689, 690 (1973), unless there was enough other evidence to establish probable cause, Orde, 161 N.H. at 269. Ordinarily, to test the validity of a

search warrant issued upon an affidavit referencing unlawfully obtained observations, we would excise the tainted information and examine the remaining evidence to determine whether it establishes probable cause.  Id.

Here, however, the State failed to submit a copy of the search warrant affidavit to either the trial court or this court.  Nor did the State argue on appeal that we should remand so that the trial court could obtain the warrant affidavit and consider the issue.  Instead, the State acknowledged at oral argument that, without the warrant affidavit, we are not in a position to excise the tainted information from the search warrant affidavit to determine whether the remaining facts support probable cause.  Cf. id. (excising illegally obtained information from search warrant affidavit and concluding that remaining information was insufficient to establish probable cause).  Accordingly, because we have not been provided with the information necessary to determine whether — absent the tainted observations — the search warrant was supported by probable cause, we conclude that the evidence officers seized pursuant to the search warrant was obtained in violation of the defendant's rights under Part I, Article 19 of the State Constitution, and, therefore, should have been suppressed.  See id.

In sum, we conclude that the information obtained during the two warrantless entries and the evidence seized pursuant to the search warrant should have been suppressed.  Because we reverse under the State Constitution, we need not reach the defendant's challenge under the Federal Constitution.  See Ball, 124 N.H. at 237.

Reversed and remanded.

HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.

12